**PUBLISH**
**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BALTAZAR ABEL SOSA-
VALENZUELA,

      Petitioner-Appellant,

  v.

ALBERTO R. GONZALES,
ATTORNEY GENERAL,

      Respondent-Appellee.

No. 05-9582

---

**PETITION FOR REVIEW FROM AN ORDER OF THE**
**BOARD OF IMMIGRATION APPEALS**
**(D.C. NO. A 90-709-068)**

---

Laura L. Lichter, Lichter & Associates, P.C., Denver, Colorado, for Petitioner-
Appellant.

Jennifer L. Lightbody, Attorney (Stephen J. Flynn, Senior Litigation Counsel,
with her on the briefs) Office of Immigration Litigation, Civil Division, United
States Department of Justice, Washington, DC, for Respondent-Appellee.

---

Before **O'BRIEN**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

      Baltazar Abel Sosa-Valenzuela, a lawful permanent resident, obtained a

waiver from removal after the Department of Homeland Security (DHS) sought to

have him deported to his native Mexico. The Board of Immigration Appeals (BIA)

concluded that the waiver should not have been granted and ordered Sosa-Valenzuela deported. This appeal raises two issues that have yet to be resolved in our Circuit: (1) what constitutes a "final order of removal" for purposes of appellate jurisdiction under 8 U.S.C. § 1252(a)(1) and § 1101(a)(47)(A); and (2) whether the BIA has the independent authority to issue a final order of removal in the absence of a removal order or a finding of deportability by an immigration judge.

We conclude (1) an immigration judge must first either issue an order of removal or make a finding of deportability to confer us with appellate jurisdiction; and (2) the BIA does not have the independent statutory authority to issue an order of removal in the first instance.

Since the record in this case discloses no finding of deportability by the immigration judge, we are left without a reviewable final order of removal. Consequently, we lack jurisdiction under 8 U.S.C. § 1252, and, accordingly DISMISS the appeal and REMAND to the BIA for further proceedings.

## I. Background

Baltazar Sosa-Valenzuela illegally entered the United States from Mexico in 1981 at the age of three. He became a lawful permanent resident in June of 1992 as part of an amnesty program implemented by Congress in its 1986 immigration reform legislation.

In 1994, at age 16, Sosa-Valenzuela pleaded guilty in Colorado of attempt to commit murder in the second degree and unlawful possession of a firearm by a

juvenile.  In 1997, as a result of a successful post-conviction petition based on the ineffectiveness of counsel in the earlier plea dealings, the court amended Sosa-Valenzuela's guilty plea to first degree assault and a crime of violence with a deadly weapon.  The amended plea, although entered on December 15, 1997, was dated nunc pro tunc, December 19, 1994.  Based on Sosa-Valenzuela's felony assault plea, DHS[1] brought deportation proceedings in February of 1997.

In response to the deportation proceedings, Sosa-Valenzuela petitioned for a waiver from removal under the provisions of § 212(c) of the Immigration and Nationality Act (INA).  Before it was repealed in 1996, § 212(c) authorized the Attorney General to grant waivers from removal to aliens who met certain criteria.[2]  Sosa-Valenzuela argued that by virtue of the state court's nunc pro tunc order, he

---

[1] The proceedings were initially brought by the Immigration and Naturalization Service, but that agency ceased to exist as of March 1, 2003 when it was replaced by three separate agencies within the Department of Homeland Security.  Homeland Security Act of 2002, Pub. L. No. 107-296, § 471; 6 U.S.C. § 291.  For simplicity, we refer to the Department of Homeland Security throughout this opinion.

[2] The former § 212(c) read:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1994 Supp. II 1996).

was eligible for a waiver because he met the residency requirements of § 212 and his felony plea occurred *before* § 212(c) was repealed in 1996.

After an evidentiary hearing, the immigration judge (IJ) granted Sosa-Valenzuela's waiver in a minute order dated October 12, 2004. The order only stated that "[Sosa-Valenzuela] be granted a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act," R. at 77; it made no explicit finding of deportability.[3] DHS subsequently asked the IJ to reconsider his order, contending that Sosa-Valenzuela was no longer eligible for the § 212(c) waiver because of new regulations adopted on September 28, 2004 and that the nunc pro tunc order was invalid.[4]

---

[3] The following is the totality of the IJ's October 12 minute order, with the IJ marking the box in front of the second order option with an X as shown below:

Decision of the Immigration Judge

The Parties appeared before me on a previous occasion on an application for relief. Formal findings were made that the respondent had met all requirements, but the decision and orders were deferred for a fingerprint clearance. The parties were advised that if no word was received from either side by the deadline set, an order granting relief would be entered. That deadline has passed and there has been no objection to granting the application.

_____ ORDER: It is ordered that respondent be granted cancellation of removal under section 240A(a) of the Immigration and Nationality Act.

\_\_X\_\_ ORDER: It is ordered that respondent be granted a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act.

R. at 77.

[4] The regulation published by the Executive Office for Immigration Review (of which the BIA is a part) established the procedures for lawful permanent residents with certain criminal convictions to apply for § 212(c) relief under the old rule. 69 Fed. Reg. 57826 (Sept. 28, 2004). Relevant to this case,

(continued...)

The IJ denied the motion to reconsider. He found the nunc pro tunc order was valid and not designed to defeat the repeal of § 212(c), so the new regulations did not apply. DHS appealed to the BIA, which concluded Sosa-Valenzuela was not eligible for waiver because of an intervening interpretation of § 212. In its decision reversing the IJ, the BIA ordered Sosa-Valenzuela deported immediately to Mexico.

Sosa-Valenzuela appealed, and we stayed his removal pending appeal.

## II. Discussion

While this case presents a number of issues on appeal, we must first determine whether we have jurisdiction to consider Sosa-Valenzuela's claims. We conclude that we do not.

*A. Jurisdictional Framework for Reviewing Removal Proceedings*

Our jurisdiction to review removal proceedings requires a "final order of removal." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006); 8 U.S.C. § 1252(a).

---

[4](...continued)
the regulation only allowed those who had pleaded guilty or nolo contendre before April 1, 1997 to apply for relief under the former § 212(c). In its motion to reconsider, the government argued Sosa-Valenzuela's amended plea occurred after this date, so Sosa-Valenzuela was not eligible for relief. Sosa-Valenzuela claims the regulation should not apply since it took effect on October 28, 2004, two weeks after the IJ's initial decision to grant the waiver. He argued alternatively that the nunc pro tunc order meant the deadline did not preclude his application, even if the regulation applied to his case.

The Code does not expressly define an order of removal, but defines an "order of deportation"[5] as "the order . . . concluding that the alien is deportable or ordering deportation."  8 U.S.C. § 1101(a)(47)(A).  An order of deportation becomes "final" when (1) the BIA affirms the order on appeal, or (2) the period for seeking BIA review has expired.  8 U.S.C. § 1101(a)(47)(B).[6]

Both parties contend that we have jurisdiction over this appeal.  Although DHS agrees we have no jurisdiction to review the appeal absent a final order of removal, it argues one exists.  DHS points to two sources for a final order under 8 U.S.C. § 1252(a)(1):  (1) the IJ's two orders granting and affirming the § 212(c) waiver; and (2) the BIA order of removal of Sosa-Valenzuela after it ruled on appeal.  Sosa-Valenzuela argues, in contrast, that jurisdiction can be found even

---

[5]  In 1996, when the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) amended the relevant statutes, the term "order of removal" replaced "order of deportation" throughout most, but not all, of the United States Code.  *See Soberanes v. Comfort*, 388 F.3d 1305, 1308 n.1 (10th Cir. 2004), *Tang v. Ashcroft*, 354 F.3d 1192, 1194 n.3 (10th Cir. 2003).  The two terms are coterminous when interpreting the statute.

[6]  Section 1101(a)(47) reads in its entirety:
(A) The term "order of deportation" means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.
(B) The order described under subparagraph (A) shall become final upon the earlier of--
(i) a determination by the Board of Immigration Appeals affirming such order; or
(ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

without a final order of removal under § 1252(a)(2)(D), which allows judicial review of "constitutional claims or questions of law."

We turn to each argument.

*B. Final Order of Removal*

DHS contends that the IJ's grant of a § 212(c) waiver, or alternatively, the BIA's removal order, constitute a final order of removal. We conclude they do not.

*1. The IJ's § 212(c) Orders.*

DHS's first argument is that the IJ's § 212(c) waiver granted on October 12, 2004 (and its November 30, 2004 decision reaffirming the waiver) suffice as an order of removal since they necessarily "conclud[e] that the alien is deportable" under § 1101(a)(47)(A). Resp. Br. at 25. The gist of its argument is that the IJ would not grant a waiver of deportation unless he first concluded the alien was removable.

The problem with this contention is that nowhere, in either granting the waiver or reaffirming it, does the IJ make an express finding that Sosa-Valenzuela was deportable or order him deported. Instead, the IJ's orders merely approve a waiver of inadmissibility under § 212(c) of the INA.[7] While it is likely the IJ made

---

[7] The now repealed § 212(c) also allowed the IJ—in cases where an alien was returning to this country—to allow reentry without regard to the grounds of admissibility, 8 U.S.C. § 1182(a), thus suggesting that a formal order of deportation was an unnecessary step in the process. The regulations to apply for § 212(c) relief require only the submission of a Form I-191, Application for Advance Permission to Return to Unrelinquished Domicile. 8 C.F.R. § 1212.3(a). The form requires no concession of deportability, because the form and § 212(c) relief were initially meant to apply to aliens with permanent residence status seeking to return to the United States.

or intended to make such a finding, the record we have discloses none. The BIA has not identified anywhere in the proceedings (nor do we have the transcript from the § 212 proceedings) where a finding of deportability was made, and neither order provides an express basis for our jurisdiction.

In sum, the IJ's § 212(c) waiver determination on this record is not—by itself—a substitute for a finding of deportability under § 1101(a)(47). Without a showing that the IJ in fact reached the question of deportability, we cannot assume such a finding and we lack jurisdiction.

*2. The BIA's Order on Appeal.*

Even without an express finding of deportability from the IJ, DHS also contends the BIA's removal order itself confers jurisdiction.[8] We disagree.

*Statutory Scheme.* As a threshold matter, the statutory scheme does not grant the BIA the independent authority to conduct removal proceedings. Removal proceedings are authorized by statute and in the first instance are conducted only by immigration judges.

Removal proceedings are governed by § 1229a. The plain language of the statute points to the primary role of the IJ in determining removability. First, it provides that "[an IJ] *shall* conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1) (emphasis added). It then adds "[u]nless otherwise specified in this chapter, a proceeding under this section shall

---

[8] In its order, the BIA concluded: "The motion to reconsider is granted, the Immigration Judge's October 12, 2004, order granting a section 212(c) waiver is vacated, and the respondent is ordered removed from the United States to Mexico." R. at 3.

be the *sole and exclusive* procedure for determining whether an alien may be admitted to the United States or, if the alien has been admitted, removed from the United States." *Id.* § 1229a(a)(3) (emphasis added). Finally, and even more explicitly, § 1229a(c)(1)(A) provides that "the [IJ] shall decide whether an alien is removable from the United States." The statute thus explicitly vests the power to conduct removal proceedings with the IJ in the first instance. The limited nature of the BIA's powers on the first question of removability naturally follows from its position as an "appellate body" with the attending limitations on its "ability to engage in fact-finding," which under the statutory scheme has been left to the immigration judges. *See Torres de la Cruz v. Maurer*, ___ F.3d ___, No. 06-9515, 2007 WL 970166 (10th Cir. April 3, 2007).

The only statutory mention of the BIA in the removal process is found in 8 U.S.C. § 1101(a)(47), which provides an order of removal becomes "final" only "upon the earlier" of (1) "a determination by the Board of Immigration Appeals affirming such order"; or (2) "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47). The removal process thus contemplates a sequential proceeding where the determination of deportability is made by immigration judges and then reviewed by the BIA. *See Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 883–84 (9th Cir. 2003) (finding that the statutes and regulations do not allow the BIA to issue a final order of removal in the absence of such an order by the IJ).

In short, if Congress intended for the BIA to determine deportability in the first instance, it would have said so, and extended the authority to conduct removal proceedings to the BIA. The statute does not so provide.

*Case Law and Regulations.* Nor do the case law and regulations suggest a different interpretation of the plain meaning of the statutes. DHS contends the statutes should be read to extend plenary authority to the BIA based on (1) a series of immigration cases that predate the current statutory scheme; and (2) the BIA's delegated authority to act on behalf of the Attorney General in removal proceedings. Again, we disagree.

Turning first to the federal case law, nothing suggests § 1229a confers jurisdiction on the BIA to order deportation absent IJ findings of removability. DHS points to several Supreme Court and circuit cases it claims support the conclusion the BIA may issue an order of removal in the first instance absent an underlying IJ order. But in each of those cases a finding of deportability had already been expressly made by the IJ. For example, in *INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999), while the Supreme Court upheld a BIA decision ordering an alien deported after the BIA vacated an IJ decision, the alien had already conceded deportability before the IJ hearing. *Id.* at 422.

The same is true of the circuit cases DHS relies on. In *Solano-Chicas v. Gonzales*, 440 F.3d 1050 (8th Cir. 2006), for example, the Eighth Circuit held that where an IJ has already issued an order concluding that an alien is deportable in the course of waiver proceedings, the BIA's subsequent cancellation of the waiver

leaves the IJ's original order of removal in place. *Id.* at 1054; *see also Delgado-Reynua v. Gonzales*, 450 F.3d 596, 601 (5th Cir. 2006) ("[W]here the BIA reverses an IJ's grant of discretionary relief and gives effect to the IJ's original order of removability, the BIA has merely eliminated 'impediments to removal' and effected the original removal order."); *Lazo v. Gonzales*, 462 F.3d 53, 54–55 (2d Cir. 2006); *Del Pilar v. U.S. Att'y Gen.*, 326 F.3d 1154, 1156 (11th Cir. 2003). And, even more recently, in *Guevara v. Gonzales*, 472 F.3d 972 (7th Cir. 2007), the Seventh Circuit upheld the BIA's order of removal, but only in a case where the IJ already found the alien removable based upon several felony convictions.[9]

These circuit cases stand for a proposition with which we agree. If the IJ makes a finding of removability, that finding satisfies § 1101(a)(47)'s definition of an order of deportation. In those circumstances, the BIA can order removal if it

---

[9] The final circuit court case cited by DHS does not apply here. In *Palmer v. INS*, 4 F.3d 482 (7th Cir. 1993), no suggestion was made that the BIA ordered deportation after denying the alien's waiver request. The BIA overturned the IJ's grant of § 212(c) relief, but there is no indication that it then ordered removal. Morever, the alien had conceded deportability. *Id.* at 484.

DHS also points to two BIA decisions where BIA ordered deportation without an underlying finding of deportability. *Matter of Wojtkow*, 18 I&N. Dec. 111 (BIA 1981); *Matter of L-*, 6 I&N. Dec. 666 (BIA 1955). While both decisions are consistent with an assertion of broad BIA authority to order deportation, neither addresses the statutory framework established by Congress now in place, which places the "sole and exclusive procedure" for conducting removal proceedings with an IJ. We thus find them unpersuasive.

reverses the IJ's determination of waiver.[10]  But—at least on this record—that did not happen in this case.

Finally, DHS's tertiary argument that agency regulations support the BIA's plenary power is equally unpersuasive.  DHS argues that the Attorney General has delegated authority to the BIA to make initial findings of deportability.  8 C.F.R. § 1003.1 (2004).  The regulation generally empowers the BIA in two ways:  (1) it "shall function as an appellate body charged with the review of those administrative adjudications under the Act that the Attorney General may by regulation assign to it," § 1003.1(d); and (2) "a panel or Board member to whom a case is assigned may take any action consistent with their authorities under the Act and the regulations as is appropriate and necessary for the disposition of the case,"  § 1003.1(d)(ii).

The regulation is of little help.  Nowhere does it expressly or impliedly grant the BIA any authority to act in the shoes of the IJ in conducting removal proceedings in the first instance.  More importantly, the statutory removal proceedings laid out in 8 U.S.C. § 1229a and the finality provisions laid out in 8 U.S.C. § 1101(a)(47)(A) plainly place with the IJ the initial responsibility of ordering deportation or making a finding of deportation.

In sum, an order of removal by the IJ is required before the BIA may order removal.  This may include an express order of removal or, more generally, a

_____

[10]  We thus disagree with the Ninth Circuit's holding in *Molina-Camacho v. Ashcroft*, 393 F.3d 937 (9th Cir. 2004) (finding that even with a conclusion of removability by an IJ, the BIA must still remand for a formal order of deportation).  That decision fails to apply the plain language of § 1101(a)(47), which defines an order of deportation to include an IJ's finding of deportability.  We have located no other case that agrees with *Molina-Camacho*.

-12-

finding of deportability. Neither occurred in this case. Consequently, no final order of removal yet exists, and we lack appellate jurisdiction under § 1252(a).

*C. Jurisdiction to Review Constitutional Claims or Questions of Law*

Sosa-Valenzuela contends that even without an order of removal we still have jurisdiction because the REAL ID Act provided us jurisdiction to review "constitutional claims or questions of law" and cites to 8 U.S.C. § 1252(a)(2)(D). The subsection reads:

> Nothing in . . . any other provision of this Act (*other than this section*) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). The statute only allows review of such questions when "this section" does not preclude such review, namely the final order of removal requirements laid out in § 1252(a)(1).

We address this precise question in *Hamilton v. Gonzales*, \_\_\_F.3d\_\_\_ No. 05-9560, 2007 WL\_\_\_\_\_ (10th Cir. May 1, 2007). There, we held that § 1252(a)(2)(D) is not an independent grant of appellate jurisdiction, but still requires a final order of removal. *Id.* Thus, Sosa-Valenzuela's contention suffers from the same infirmity we discussed above—the absence of a final order of removal.

For these reasons, subsection 1252(a)(2)(D) does not provide jurisdiction independent of a final order of removal.

-13-

### III. Conclusion

Finding no final order of removal, we are without jurisdiction to review this case. We remand to the BIA to remand to the IJ for a finding on deportability and disposition of any other outstanding issues in the case.