FILED
United States Court of Appeals
Tenth Circuit

August 31, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BALTAZAR ABEL SOSA-
VALENZUELA,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 10-9592

---

**APPEAL FROM THE BOARD OF IMMIGRATION APPEALS**

---

Mark R. Barr (Laura L. Lichter with him on the briefs), Lichter & Associates,
P.C., Denver, Colorado, for Petitioner.

Dara S. Smith, Office of Immigration Litigation (Tony West, Assistant Attorney
General, Civil Division, and David V. Bernal, Assistant Director, Office of
Immigration Litigation, with her on the brief), Department of Justice,
Washington, District of Columbia, for Respondent.

---

Before **BRISCOE**, Chief Circuit Judge, **TYMKOVICH**, Circuit Judge, and
**EAGAN**[*], District Judge.

---

**TYMKOVICH**, Circuit Judge.

---

    [*] The Honorable Claire V. Eagan, District Judge, United States District
Court, Northern District of Oklahoma, sitting by designation.

This appeal is before us a second time. Lacking a final order of deportation in the prior appeal, we remanded to the BIA to cure the jurisdictional defect. *Sosa-Valenzuela v. Gonzales*, 483 F.3d 1140 (10th Cir. 2007). The issues raised in that case relating to the denial of a waiver of deportation are now properly before us. In addition, on remand the petitioner applied for an adjustment of status based on his marriage to an American citizen, and the denial of that request is also at issue.

Baltazar Sosa-Valenzuela illegally entered the United States from Mexico in 1981 at the age of three, and became a lawful permanent resident in 1992. In 1994, when he was sixteen, he shot and seriously injured a gang member. He pleaded guilty to attempted murder in the second degree and to unlawful possession of a firearm by a juvenile. After a successful post-conviction ineffectiveness of counsel petition, the state district court amended Sosa-Valenzuela's guilty plea to first degree assault and crime of violence with a deadly weapon.

In 1996, while Sosa-Valenzuela was in juvenile detention, the Immigration and Naturalization Service, now the Department of Homeland Security (DHS) issued Sosa-Valenzuela a show cause order, charging him as deportable because of his criminal conviction under 8 U.S.C. § 1251(a)(2)(A)(ii). The immigration proceedings were then delayed for several years, while Sosa-Valenzuela was released and successfully completed his parole. Sosa-Valenzuela conceded

deportability but requested a § 212 waiver which was then available as a form of discretionary relief under federal law and an adjustment of status.[1]  Both forms of relief were granted by the IJ and then denied by the BIA.

Sosa-Valenzuela now appeals the BIA's decision and order of deportation on three grounds:  (1) He contests the procedural regularity of the BIA decision as a collateral attack on the IJ's waiver decision; (2) he challenges the merits of the BIA's decision to reverse the IJ's waiver, arguing that it conflicts with the Supreme Court's decision in *Judulang v. Holder*, 132 S. Ct. 476 (2011); and (3) he argues the BIA abused its discretion in denying him an adjustment of status based on his marriage to an American citizen.

We find the BIA was not precluded from reviewing the IJ's waiver decision, but we must remand to the BIA so that it may evaluate its decision in light of the Supreme Court's ruling in *Judulang*.  We affirm the BIA's discretionary denial of adjustment of status.

## I.  Procedural Background

This case has a lengthy procedural history, but a brief review of it is necessary to understand Sosa-Valenzuela's claims on appeal.

---

[1]  Section 212(c) of the Immigration and Nationality Act was repealed by Pub. L. 104-208, Div. C., Title III, § 304(b), Sept. 30. 1996, 110. Stat. 3009-597.

*IJ Proceedings*

While his deportation proceedings were pending, Sosa-Valenzuela petitioned the Department of Justice Executive Office for Immigration Review for a waiver from removal under the provisions of § 212(c) of the Immigration and Nationality Act (INA). 8 U.S.C. § 1182(c) (repealed). At the time, § 212(c) authorized the Attorney General, in his or her discretion, to grant waivers from removal to deportable aliens who were long-time lawful residents of the United States and met other eligibility criteria.

After an evidentiary hearing, the immigration judge found that Sosa-Valenzuela was eligible for a waiver and that the equities, particularly his juvenile status at the time of his convictions, his community service, dependent family in the United States, and lack of family in Mexico, supported the grant of discretionary relief.

Rather than file a direct appeal of the IJ's decision, DHS filed a motion to reconsider. It argued that the IJ's decision was flawed because Sosa-Valenzuela was no longer eligible for a § 212(c) waiver in light of new regulations adopted shortly after the IJ's decision, as well as its interpretation of the eligibility criteria under preexisting regulations and case law. Those regulations codified and clarified that relief under § 212(c) was only available to aliens who had pleaded guilty or nolo contendre before April 1, 1997. Sosa-Valenzuela argued this regulation did not apply to him because, although he entered an amended plea of

-4-

guilty to lesser charges in December 1997 after his successful collateral attack, the state court entered the plea nunc pro tunc December 19, 1994, well before the § 212(c) cut-off date. The IJ agreed with Sosa-Valenzuela, concluding the correct date of the guilty plea was 1994, not 1997.

*Appeal to the BIA*

DHS appealed the denial of the motion to reconsider to the BIA. The BIA sustained DHS's appeal, granted the motion to reconsider, and vacated the IJ's § 212(c) waiver.

In ruling in favor of DHS, the BIA relied on its decision in *Matter of Brieva*, 23 I. & N. Dec. 766 (BIA 2005), a case decided after the IJ's decision to deny the motion to reconsider and while DHS's appeal was pending before the BIA. *Matter of Brieva* held that aliens with a conviction for aggravated assault (including Sosa-Valenzuela's conviction for first degree assault) do not meet the eligibility requirements for a § 212(c) waiver. Applying this interpretation to Sosa-Valenzuela, the BIA denied the waiver.

*Tenth Circuit Appeal*

Sosa-Valenzuela appealed the BIA's decision to this court, but we found we lacked appellate jurisdiction because the record did not reveal that there had ever been a final order of deportation. *Sosa-Valenzuela v. Gonzales*, 483 F.3d 1140 (10th Cir. 2007). We remanded the matter to the BIA "for a finding on

-5-

deportability and disposition of any other outstanding issues in the case." *Id*. at 1147. The BIA then remanded it to the IJ.

*Remand Before the IJ*

On remand, the IJ confirmed he entered a final order of deportation in 2004 when he made his initial ruling on the waiver but that order had not been included in the record on appeal. After confirming the existence of an order of deportation and his earlier waiver decision, the IJ went on to consider an additional ground for a waiver of deportation—Sosa-Valenzuela had applied for an adjustment of status to lawful permanent resident based on his marriage in 2001 to an American citizen and the birth of his two children. The IJ granted this alternative form of relief, finding that in the period since the initial waiver in 2004, Sosa-Valenzuela "has had an excellent record . . . of employment, volunteer work, and taking care of his family." R. 90.

*Second Appeal to the BIA*

DHS appealed again, and again the BIA reversed. The BIA disagreed with the IJ's discretionary ruling, and, in re-weighing the equities, found that the positive factors in Sosa-Valenzuela's life did not outweigh the seriousness of his prior felony conviction.

Sosa-Valenzuela appealed, and both BIA's denial of the § 212(c) waiver and its denial of the adjustment of status are now before us in this appeal.

# II.  Jurisdiction

We have jurisdiction under 8 U.S.C. § 1252(a) because the BIA's order denying relief from removal is an appealable final order of removal.  *Infanzon v. Ashcroft*, 386 F.3d 1359 (10th Cir. 2004).  Our review, however, is limited to "constitutional claims or questions of law" because eligibility for relief from removal is ordinarily an unreviewable matter of discretion under 8 U.S.C. § 1252(a)(2)(C) & (D).  *See Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006).  We thus review the BIA's legal determinations de novo, and we do not review its exercise of discretion at all.  *Id*. at 1279.

# III.  Analysis

This appeal requires us to resolve three questions.  First, was the BIA correct in determining it had the authority to reverse the IJ's § 212(c) waiver decision through the appeal of a motion to reconsider?  Then, if so, was the BIA correct in finding Sosa-Valenzuela was categorically ineligible for a waiver based on the BIA's decision in *Matter of Brieva*, decided while the appeal was pending before the BIA?  Third, did the BIA properly reject the IJ's granting of an adjustment of status based on Sosa-Valenzuela's marriage to an American citizen?

## A.  *BIA Review of § 212(c) Waiver*

Sosa-Valenzuela first argues the IJ's original granting of the § 212(c) waiver was a final order that was not timely appealed by DHS.  Thus, he

contends, the BIA's subsequent reversal of the waiver through an appeal of DHS's motion to reconsider was an impermissible collateral attack with no legal effect.

To understand this argument, a brief review of the procedural posture of the case is helpful. Although DHS commenced deportation proceedings in 1997, while those proceedings were pending Sosa-Valenzuela timely petitioned for a § 212(c) waiver. That waiver was granted on October 12, 2004. Two weeks after that decision, DHS filed a motion to reconsider with the IJ. But while the motion to reconsider was pending, the 30-day time to file a direct appeal of the waiver decision with the BIA expired. The IJ then denied the motion to reconsider, and DHS timely appealed that decision to the BIA. The BIA, exercising de novo review, granted the motion for reconsideration and reversed the IJ's grant of the § 212(c) waiver. The BIA's reversal was based on a determination that Sosa-Valenzuala was ineligible for relief because of his prior criminal conviction, relying on *Matter of Brieva*, 23 I. & N. Dec. 766 (BIA 2005), a case the BIA decided while DHS's appeal was pending.

Based on this procedural situation, Sosa-Valenzuela makes two arguments. First, the IJ's waiver decision had become a final judgment because DHS did not file a direct appeal, and, therefore, Sosa-Valenzuela's § 212(c) waiver became a vested right when the time to appeal expired. He also argues that even if the IJ's decision could be collaterally attacked through a motion for reconsideration, the

BIA could only review the grounds for reconsideration raised in the motion, and not the grounds the BIA ultimately relied on—a new precedent of the BIA.

We find no error in the BIA's decision on the appeal of the motion for reconsideration. Although a "decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first," 8 CFR § 1003.39, the regulations also provide that parties may ask for reconsideration of decisions by the IJ, generally within thirty days of the "entry of a final administrative order." 8 CFR § 1003.23(b)(1). Once a timely motion for reconsideration has been filed, the IJ has broad discretion to reconsider a prior decision:

> An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals.

*Id.* DHS's motion to the IJ, asking him to reconsider his ruling on Sosa-Valenzuela's § 212(c) waiver was proper under this regulation, and although the motion to reconsider must "state the reasons for the motion by specifying the errors of fact or law in the Immigration Judge's prior decision" and "be supported by pertinent authority," there is no language in the regulations limiting the IJ's review to these specified errors. 8 CFR § 1003.23(b)(2). And it is worth noting, if the IJ had *denied* the § 212(c) waiver, Sosa-Valenzuela could have moved for reconsideration of the decision under the same provision, even *after* it became

-9-

final for purposes of direct review to the BIA, if he did so within thirty days of the final administrative order and before an appeal was lodged with the BIA. 8 CFR § 1003.23(b)(1).

After the IJ denied DHS's motion to reconsider, DHS timely appealed the decision to the BIA. The BIA's appellate jurisdiction is similarly broad: "The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*." 8 C.F.R. § 1003.1(d)(3)(ii). And even without a direct appeal, the BIA's regulations grant it wide jurisdiction to reconsider or reopen decisions in any case before it:

> *The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. ...* The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.

8 C.F.R. § 1003.2(a) (emphasis added). Thus, the regulations allow DHS to seek de novo review and reconsideration in the BIA. And the rules also allow the BIA *on its own motion* to reconsider a decision, even one where a final administrative order has been entered. As the BIA has held, "A motion to reconsider is a request that the [IJ or BIA] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Matter of Cerna*, 20 I. & N. Dec. 399, 405 n. 2 (BIA 1991) (quotation omitted). Thus, the BIA had authority to reconsider the IJ's decision,

-10-

either exercising its own discretion, or through appeal of a motion to reconsider from the IJ.

Notwithstanding these broad powers, Sosa-Valenzuela argues the BIA was limited in its appellate review to the issue raised by DHS in its motion to reconsider. While a motion to reconsider before the IJ must "state the reasons for the motion by specifying the errors of fact or law in the Immigration Judge's prior decision," 8 C.F.R. § 1003.23, the rules governing the BIA on appeal do not preclude it from taking into account laws or authorities not addressed in the motion before the IJ. Instead, the BIA has de novo authority to in effect "place[] ourselves back in time and consider[] the case as though a decision in the case on the record before us had never been entered." *Matter of Cerna*, 20 I. & N. Dec. 399, 402–03 (BIA 1999). Thus, no procedural or substantive rule limits the authority of the BIA to consider Sosa-Valenzuela's status under its developing case law at the time it considered DHS's appeal of the motion for reconsideration.[2]

"[T]he BIA is required to apply new law to its review." *Valdiviezo-Galdamez v. Attorney General of United States*, 663 F.3d 582, 602–03 (3d Cir. 2011) (holding that the BIA did not err in relying on new precedent not briefed by either party to reject an asylum claim); *see also Ortiz v. INS*, 179 F.3d

---

[2] We address the substantive problems with this decision in light of the Supreme Court's recent decision in *Judulang* below.

1148, 1156 (9th Cir. 1999) ( holding "the BIA was required to apply the law existing at the time of its review, even if different from the law applied by the IJ").[3]

Given the scope of the BIA's appellate authority, Sosa-Valenzuela makes several arguments, none of which we find persuasive. First, he argues that the IJ's § 212(c) decision became final after thirty days and the BIA lost any power to review the merits of the decision. He points to the Supreme Court's decision in *Stone v. INS*, 514 U.S. 386 (1995), where the Court considered the scope of federal court review of final orders from the BIA. In that case, the alien asked for a suspension of deportation, which was denied by an Immigration Judge and the BIA on appeal. After a motion for reconsideration, both the IJ and BIA again denied relief. The alien then sought judicial review both of the original order denying suspension and of the order denying the motion to reconsider. The circuit court found it lacked appellate jurisdiction over the suspension order because the time to seek judicial review had expired, but the court could exercise jurisdiction over the timely filed motion to reconsider.

---

[3] There are some limits on the retroactive application of newly developed law. *See, e.g.*, *In re Mersmann*, 505 F.3d 1033, 1051 (10th Cir. 2007) (en banc) *abrogated on other grounds* by *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010). But none of those limits apply here since the BIA had before it a timely motion to reconsider, and DHS argues the decision was based on preexisting regulations and case law.

The Supreme Court agreed, finding Stone's original suspension order was final and the alien should have sought judicial review in the federal courts even while the motion to reconsider was pending. The Supreme Court rejected the argument that a motion to reconsider tolled the period for seeking appellate review.

*Stone* does not impose any restrictions on the appellate jurisdiction of the BIA. Instead, it applies to parties seeking *judicial* review of agency action in the federal courts. As the applicable statute then provided, an appeal to the circuit courts "shall be the *sole and exclusive procedure for*, the *judicial* review of all final orders of deportation . . . made against aliens within the United States" and "a petition for review may be filed not later than 90 days after the date of the issuance of the final deportation order." 8 U.S.C. § 1105a. (1988 ed., and Supp. V.) (emphasis added). Congress could hardly have made it more clear that these deadlines only apply to federal court jurisdiction.

No comparable limitations exist on the BIA's authority to administratively review immigration appeals. *Stone* says nothing about the scope of the BIA's internal administrative process, and cannot be read to narrow the Board's broad authority, granted by statute and regulation. In fact, as a matter of administrative practice and structure, immigration proceedings often involve dual appeals of removal orders and motions to reconsider. As the regulations provide, both the IJ and BIA may, upon motion or sua sponte, "reopen or reconsider any case" in

-13-

which the judge or Board has made a decision. 8 CFR § 1003.23; 8 C.F.R. § 1003.2(a). And, similarly, there is no restriction on the substantive grounds the IJ or BIA can use in evaluating a motion for reconsideration of a final order of removal.[4]

Sosa-Valenzuela also points to a case from the Fifth Circuit to support his argument that the BIA lost appellate jurisdiction over the waiver decision. In *Guevara v. Gonzales*, 450 F.3d 173 (5th Cir. 2006), the petitioner was initially successful in obtaining relief from deportation before the IJ. Two-and-a-half years later, long after the time for filing a motion for reconsideration had expired, the BIA went on to grant DHS's motion to reconsider and reversed the IJ's decision. The circuit court found the BIA's decision to reconsider was an improper collateral attack on the original IJ decision. The court compared a motion to reconsider before the BIA to a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) and a motion for new trial pursuant to Federal Rule of Criminal Procedure 33 and found "[t]he analogy indicates that a motion to reopen immigration proceedings is separate and apart from direct review" and that because "the motion was a collateral attack on the BIA's decision, it was barred by res judicata." *Id.* at 175–76.

---

[4] Sosa-Valenzuela argues DHS's appeal was "borderline frivolous," but as discussed above, the BIA application of its case law and regulations was well within its authority in reviewing motions for reconsideration.

*Guevara* does not apply here.  First, the motion to reconsider in that case occurred over two years after the grant of relief had been decided by the BIA, and did not involve a challenge to the decision of the IJ.  Here, DHS's motion to reconsider was filed with the IJ who made the initial decision *before* the time to file an appeal of the § 212(c) decision had expired, and sought the reversal of the waiver decision.  The administrative process was not yet complete and neither the IJ or the BIA had issued any decision, let alone a final decision.  This is far different than the posture of the motion at issue in *Guevara* where the administrative appeals process up to and including the BIA had been long completed.[5]

Even if the BIA had the power to review the § 212(c) waiver decision, Sosa-Valenzuela argues that these broad powers of collateral review violate his due process rights.  But in immigration proceedings, "a petitioner has no liberty or property interest in obtaining purely discretionary relief." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (citations omitted).  "Because aliens do not have a constitutional right to enter or remain in the United States, the only

---

[5]  Sosa-Valenzuela also points to the Fifth Circuit's holding in *Hernandez-Rodriguez v. Pasquarell*, 118 F.3d 1034 (5th Cir. 1997), which declined to apply a regulation in the petitioner's favor that the INS promulgated after a deportation decision.  In fact, the Fifth Circuit denied the application, because, among other reasons, "there is the simple fact that Petitioner has never sought [administrative] relief under the amended regulation," even though the immigration service "essentially invited Petitioner to file a new motion to reopen and conceded that any such motion would be reviewed under the new regulations." *Id*. at 1041.  There is no such default here.

-15-

protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. (quotation omitted). Sosa-Valenzuela has had the opportunity to be heard, and "any alleged liberty interest [in discretionary immigration relief] must be created by statute or regulation." *Id.* "In order for the regulation to create a liberty interest, it must substantively limit the exercise of official discretion through specifically defined criteria that guide official decision making." *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1293 (10th Cir. 2001) (rejecting a due process challenge to the BIA's denial of a motion to reopen because "the regulation lacks criteria or standards limiting official discretion"). There are no such limitations here. 8 C.F.R. § 1003.2(a). The procedural issues that Sosa-Valenzuela raises are matters of statutory and regulatory scope, and the BIA's interpretation of its appellate jurisdiction was not a denial of due process.[6]

In sum, we conclude the BIA had the de novo authority to review the IJ's waiver decision in an appeal of DHS's motion for reconsideration.

---

[6] Sosa-Valenzuela also suggests the BIA has limited its ability to review § 212(c) waivers by regulation, and "an approved section 212(c) application cannot be subsequently revoked." 8 C.F.R. § 1212.3(d). But the BIA has never been asked to consider the application of this regulation to this case. It should have the chance to do so in the first instance, and can do so on remand. "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002).

## B. BIA's Reversal of Section 212(c) Waiver

Having found the BIA had the authority to consider the IJ's waiver decision on appeal, we turn to the merits of that decision. The BIA found that Sosa-Valenzuela was not eligible for a § 212(c) waiver, applying *Matter of Brieva*, 23 I. & N. Dec. 766 (BIA 2005). In *Matter of Brieva* the BIA determined that waiver applicants with convictions for an aggravated felony crime of violence are categorically ineligible for § 212(c) relief, formally adopting the so-called "comparable-grounds" rule, which "evaluates whether the ground for deportation charged in a case has a close analogue in the statute's list of exclusion grounds." *Judulang*, 132 S. Ct. at 481.[7] Under this approach, Sosa-Valenzuela was ineligible for relief.

After the BIA decided *Matter of Brieva*, its analysis generated conflicting decisions in the circuit courts. The Second Circuit, for example, rejected the comparable-grounds approach, *see Blake v. Carbone*, 489 F.3d 88, 103 (2d Cir. 2007), while the First, Third, and Sixth Circuits upheld the BIA's policy, *Kim v. Gonzales*, 468 F.3d 58, 62–63 (1st Cir. 2006); *Caroleo v. Gonzales*, 476 F.3d 158,

---

[7] "Those mathematically inclined might think of the comparable-grounds approach as employing Venn diagrams. Within one circle are all the criminal offenses composing the particular ground of deportation charged. Within other circles are the offenses composing the various exclusion grounds. When, but only when, the 'deportation circle' sufficiently corresponds to one of the 'exclusion circles' may an alien apply for § 212(c) relief." *Judulang*, 132 S. Ct. at 482.

162–163, 168 (3d Cir. 2007); *Koussan v. Holder*, 556 F.3d 403, 412–414 (6th Cir. 2009).

While this appeal was pending, the Supreme Court granted certiorari to resolve the circuit split, and ruled against the BIA. *Judulang v. Holder*, 132 S. Ct. 476 (2011). In *Judulang*, the Court found that the BIA's approach in *Matter of Brieva* "does not rest on any factors relevant to whether an alien (or any group of aliens) should be deported," but "instead distinguishes among aliens—decides who should be eligible for discretionary relief and who should not—solely by comparing the metes and bounds of diverse statutory categories into which an alien falls." 132 S. Ct. at 487. This BIA policy has "no connection to the goals of the deportation process or the rational operation of the immigration laws." *Id.* Accordingly, it was arbitrary and capricious under the Administrative Procedures Act to rely on this approach to determine eligibility for relief from deportation. The Supreme Court remanded *Judulang* to the BIA with instructions to develop new criteria for determining who is eligible to apply for § 212(c) waivers. *Id.* at 490.

In denying relief to Sosa-Valenzuela, the BIA relied on this now-rejected approach. We asked for supplemental briefing on *Judulang's* application here. In their supplemental briefs the parties did not contest that the basis for the BIA's decision to deny the § 212(c) waiver is now legally untenable. The only dispute

-18-

is whether it is necessary for us to remand this case to the BIA for an evaluation of Sosa-Valenzuela's application under the correct legal criteria.

DHS asks us to find any further remand would be futile. A § 212(c) waiver remains a discretionary remedy, and the BIA has already indicated its unwillingness to exercise discretion in favor of Sosa-Valenzuela. We disagree. "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands," and "[t]his principle has obvious importance in the immigration context." *INS v. Ventura*, 537 U.S. 12, 16 (2002). Remand is the preferred remedy because the BIA "can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Id.* at 16–17; *See also Negusie v. Holder*, 555 U.S. 511, 523 (2009).

Remand may well lead to a predictable result in this case. Nonetheless, "[b]ecause an agency has a duty not only to reach an outcome, but to explain that outcome, we intrude on the agency's authority not only by reaching a certain result on the merits . . . but also by supporting a result reached by the agency with reasoning not explicitly relied on by the agency." *Mickeviciute v. INS*, 327 F.3d 1159, 1165 (10th Cir. 2003). We should not presume a result on remand, and therefore "resist the temptation of stepping out of our limited judicial role even

where resolving the merits ourselves may seem an easier, more efficient, and more palatable course." *Id*.[8]

It is up to the BIA in the first instance to apply its post-*Judulang* approach to Sosa-Valenzuela's request for a § 212(c) waiver. We therefore remand that question to the BIA.

## C. Adjustment of Status

The final issue is whether Sosa-Valenzuela is eligible for adjustment of status on an alternate ground from his § 212(c) waiver—his 2001 marriage to an American citizen.

While Sosa-Valenzuela's case was on remand, he applied for an adjustment of status and relief from deportation, pursuant to 8 U.S.C. § 1255(a). Under that provision, the status of an alien "may be adjusted by the Attorney General, in his discretion" on the basis of a lawful marriage to an American citizen. *Id.* In granting the adjustment of status, the IJ found that the equities favored Sosa-

---

[8] The cases cited by DHS do not instruct to the contrary. In *Cruz-Funez v. Gonzales*, 406 F.3d 1187 (10th Cir. 2005) we found that while the BIA's decision defied review we could proceed anyway because the IJ opinion, which the BIA affirmed, was sufficiently clear that we could rely on its reasoning to affirm. In another case, *Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 107 (2d Cir. 2006), the Second Circuit held there was no need to remand to the BIA when "overwhelming evidence in the record makes it clear that the same decision is inevitable on remand, or, in short, whenever the reviewing panel is confident that the agency would reach the same result upon a reconsideration cleansed of errors." But in that case the legal error was only "tangential" to the BIA's conclusion. Here, the legal error was a central feature of the BIA's decision, and we leave it to the Board to apply the correct standard in the first instance.

Valenzuela because of his marriage, family support, community involvement, and employment.

DHS appealed and once again the BIA reversed, exercising its authority to review questions of discretion de novo, *see* 8 C.F.R. § 1003.1(d):

> Before the respondent may be granted adjustment of status, he must show that he merits such relief as a matter of discretion. We consider the existence of favorable factors such as family ties, hardship and length of residence in the United States. Where adverse factors are present, however, the respondent may need to present evidence of unusual or even outstanding equities . . . Indeed, even nonviolent aggravated felonies will generally constitute significant negative factors militating strongly against a favorable exercise of discretion.

R. 4–5 (citations omitted). Applying this standard, the BIA went on to evaluate the equities and deny adjustment of status. It reviewed all of the favorable factors supporting the IJ's decision, including his family situation and efforts at rehabilitation. But the BIA, in the end, found that although Sosa-Valenzuela presented "many favorable equities, given the serious and violent nature of his convictions, and the fact that he has been convicted for an aggravated felony, we conclude that he does not merit a favorable exercise of discretion." R. 5.

Our review of the BIA's decisions is limited, and we do not have jurisdiction to review an exercise of discretion. Under 8 U.S.C. § 1252(a)(2)(C), we only review "constitutional claims or questions of law." Absent those types of questions, "[n]otwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, *no*

*court shall have jurisdiction* to review[] (i) any judgment regarding the granting of relief" for adjustment of status under § 1255.  § 1252(a)(2)(B).

It is true § 1252(a)(2)(B) does not prohibit review of non-discretionary legal determinations.  *Sabido Valdivia v. Gonzales,* 423 F.3d 1144, 1149 (10th Cir. 2005) (finding jurisdiction to review a non-discretionary decision "relating to § 1229b's continuous physical presence requirement").  "The determination of whether a particular decision is discretionary or non-discretionary is made on a case-by-case basis."  *Perales-Cumpean v. Gonzales*, 429 F.3d 977, 982 (10th Cir. 2005).  "Decisions that involve a judgment call by the agency, or for which there is no algorithm on which review may be based, are considered discretionary and hence immune from review," but "[d]ecisions for which there is a clear standard, and for which no evaluation of non-discretionary criteria is required, by contrast, may be considered non-discretionary and thus reviewable."  *Id*.

Sosa-Valenzuela seeks to overcome the application of the jurisdiction-bar, claiming that the BIA applied the wrong legal standard.  He argues the BIA misapplied its precedents in failing to weigh the positive equities more heavily than the negative equities.  But that is only another way of challenging the Board's discretionary conclusion, which we do not have jurisdiction to do.

While the BIA did not explain the precise weight it gave to each factor, it is clear the BIA applied a totality of the circumstances, individualized, case-specific analysis to Sosa-Valenzuela's application.  That complies with BIA precedent:

-22-

"In making discretionary determinations, we weigh the favorable and adverse factors presented to decide whether on balance, the totality of the evidence before us indicates that the respondent has adequately demonstrated that he or she warrants a favorable exercise of discretion." *Matter of A- M-*, 25 I. & N. Dec. 66, 76 (BIA 2009) (citations and quotations omitted).

Even so, Sosa-Valenzuela argues that the BIA wrongly applied the balancing standard it has developed for adjustment of status cases such as his. He points to two cases he claims the BIA cited but should not have relied on—*Matter of Arai*, 13 I & N Dec. 494 (BIA 1970), which addressed adjustments of status for criminal aliens with adult, rather than juvenile, criminal records, and *Matter of K-A*, 23 I. & N. Dec. 661 (BIA 2004), which dealt with a discretionary relief in asylum cases. Whether or not the BIA properly relied on these cases, the jurisdictional bar still applies: "Recasting challenges to factual . . . determinations as due process or other constitutional claims, however, is clearly insufficient to give this Court jurisdiction under § 1252(a)(2)(D)," and "[t]he same holds true for petitioner's assertion that the . . . BIA failed to apply what [the alien] characterizes as controlling BIA precedent and regulations." *Arambula-Medina v. Holder*, 572 F.3d 824, 829 (10th Cir. 2009) (citation omitted).

And, in any event, the cases cited by Sosa-Valenzuela only illustrate how, as a general matter, the BIA views competing equitable considerations. In *Matter*

-23-

*of Arai*, for example, the BIA discussed the relative weighing of equitable factors, positive and negative: "Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities"—exactly what the BIA did here. 13 I. & N. Dec. at 496.[9] And in citing *Matter of K-A*, the BIA was only noting that a history of violent crime is an especially serious matter. But these precedents do not require *or* preclude the BIA from weighing the equities as it did here. Instead the BIA looked at all of the factors, both pro and con, and made a considered decision denying relief.

In sum, Sosa-Valenzuela cannot point to any precedent the BIA failed to follow or misapplied in its discretionary review of his application for adjustment of status. The Board thus did not commit legal error in its decision denying adjustment of status based on marriage.

---

[9] It is, moreover, "difficult and probably inadvisable to set up restrictive guidelines for the exercise of discretion. Problems which may arise in applications for adjustment must of necessity be resolved on an individual basis. Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities. Generally, favorable factors such as family ties, hardship, length of residence in the United States, etc., will be considered as countervailing factors meriting favorable exercise of administrative discretion. In the absence of adverse factors, adjustment will ordinarily be granted, still as a matter of discretion." *Matter of Arai*, 13 I & N Dec. at 495–96.

# IV. Conclusion

For the reasons discussed above, we AFFIRM the BIA's denial of adjustment of status, and REMAND to the BIA for further proceedings regarding the § 212(c) waiver.