In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1253

CARLOS ALBERTO MEJIA GALINDO,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A098-644-509

ARGUED NOVEMBER 28, 2017 — DECIDED JULY 31, 2018

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Carlos Alberto Mejia Galindo, a native of Honduras and a lawful permanent resident, faces removal from the United States as a result of three Kentucky

convictions for possession of drug paraphernalia.[1] The immigration judge determined that Mejia Galindo is not removable under 8 U.S.C. § 1227(a)(2)(B)(i) as an alien convicted of a controlled-substance offense. The Board of Immigration Appeals reversed and purported to enter a removal order. Mejia Galindo petitions for review.

We lack jurisdiction to review the Board's determination that the drug-paraphernalia convictions qualify as controlled-substance offenses. The Immigration and Nationality Act ("INA") empowers us to review only a "final order of removal." 8 U.S.C. § 1252. A final removal order is created in two steps. First, the immigration judge must conclude that the alien is removable. *Id.* § 1101(a)(47)(A). Second, the immigration judge's removal order becomes "final" upon "a determination by the Board of Immigration Appeals affirming such order." *Id.* § 1101(a)(47)(B). Here, the immigration judge never made the requisite finding of removability, so there is no final order of removal to review.

Although we lack jurisdiction to review the Board's classification of the drug-paraphernalia offenses, our jurisdiction to consider our own jurisdiction includes the authority to vacate the Board's decision and remand as a remedy for the legal error we have identified in our jurisdictional decision. *See Rhodes-Bradford v. Keisler*, 507 F.3d 77, 81–82 (2d Cir. 2007). Because the Board lacked the authority to issue a removal order in the first instance, we vacate and remand its ultra vires order.

---

[1] The petitioner's last name is hyphenated in the immigration judge's order, his criminal records, and in filings before this court. We do not hyphenate his name to remain consistent with the Board's order.

**I. Background**

Mejia Galindo legally entered the United States in 2001 and became a lawful permanent resident in 2007. Soon thereafter he amassed three convictions for possession of drug paraphernalia in violation of section 218A.500(2) of the Kentucky Statutes. In response the Department of Homeland Security initiated removal proceedings, charging Mejia Galindo with removability under § 1227(a)(2)(B)(i) as an alien convicted of a controlled-substance offense.

Mejia Galindo moved to terminate the removal proceedings. To determine whether his paraphernalia convictions qualify as removable offenses, the immigration judge applied the familiar "categorical" and "modified categorical" approaches. Under the categorical approach, an alien's state conviction renders him removable if it "necessarily establishe[s]" a violation of federal law. *Mellouli v. Lynch*, 135 S. Ct. 1980, 1987 (2015). The modified categorical approach applies if a divisible statute "proscribes multiple types of conduct, some of which would constitute a [removable offense] and some of which would not." *Lopez v. Lynch*, 810 F.3d 484, 489 (7th Cir. 2016) (quoting *Familia Rosario v. Holder*, 655 F.3d 739, 743 (7th Cir. 2011)). If that's the case, a court may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Descamps v. United States*, 570 U.S. 254, 257 (2013).

The immigration judge first determined that Mejia Galindo is not removable under the categorical approach. He reasoned that the Kentucky statute criminalizes paraphernalia for three drugs that are not proscribed by federal law—tramadol, carisoprodol, and nalbuphine. As a conse-

quence, Mejia Galindo's drug-paraphernalia convictions do not necessarily establish a violation of the federal controlled-substance statute. Next, the immigration judge concluded that the modified categorical approach does not apply because the paraphernalia statute is not divisible. Based on these findings, the immigration judge terminated the removal proceedings.

The Board reversed, finding that Mejia Galindo's convictions necessarily establish a controlled-substance violation. Despite the facial mismatch between the state and federal statutes, the Board determined that there is no "realistic probability" that Mejia Galindo's conviction involved tramadol, carisoprodol, or nalbuphine. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (holding that a state statute is overbroad if there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime") (internal quotation marks omitted). Instead of remanding for the immigration judge to enter a removal order, the Board purported to enter a removal order on its own.

Mejia Galindo petitioned for review, contending that he is not removable and, in any event, the Board lacks the authority to enter a removal order in the first instance.

## II. Discussion

The INA grants us jurisdiction to review the Board's decision only if it constitutes a "final order of removal." § 1252(a)(1). To interpret that phrase, we look to the definition of "order of deportation," which envisions a two-step removal process. *See Guevara v. Gonzales*, 472 F.3d 972, 976 (7th Cir. 2007) ("deportable" and "removable" are synony-

mous under the INA); *Sosa-Valenzuela v. Gonzales*, 483 F.3d 1140, 1143 n.5 (10th Cir. 2007) (same). First, a "special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable[,] [must] conclud[e] that the alien is deportable or order[] deportation." § 1101(a)(47)(A). In this context "special inquiry officer" means "immigration judge." *Guevara*, 472 F.3d at 976; 8 C.F.R. § 3.0. Second, the removal order becomes "final" upon "a determination by the Board of Immigration Appeals affirming such order" or upon expiration of the period for the alien to seek review. § 1101(a)(47)(B)(i).

Here, the immigration judge concluded that Mejia Galindo was *not* removable and consequently did not issue a removal order. The Board reversed and purported to enter a removal order. We therefore must consider whether the INA grants the Board authority to issue such an order in the first instance. We conclude that it does not.

Section 1101(a)(47) contemplates a sequential removal process with the immigration judge serving as fact-finder and the Board serving as an appellate body. *Sosa-Valenzuela*, 483 F.3d at 1145 (discussing the Board's "position as an appellate body with the attending limitations on its ability to engage in fact-finding") (internal quotation marks omitted). This interpretation finds support in 8 U.S.C. § 1229a, which expressly vests immigration judges with the authority to conduct removal proceedings in the first instance. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."), (c)(1)(A) ("[T]he immigration judge shall decide whether an alien is removable from the United States.").

Furthermore, a removal proceeding conducted under § 1229a "shall be the *sole and exclusive procedure* for determining whether an alien may be … removed from the United States." § 1229a(a)(3) (emphasis added).

In *Guevara v. Gonzales*, 472 F.3d 972, 973 (7th Cir. 2007), the immigration judge found an alien removable but granted a discretionary waiver of removal. The Board reversed the discretionary waiver and relied on the immigration judge's finding of removability to enter a removal order. *Id.* We held that the Board's order was permissible because the immigration judge's "threshold determination constituted an order of deportation (i.e., removal) that could be given effect by the [Board]." *Id.* at 976. Though not explicitly stated, inherent in our reasoning was the assumption that the Board is powerless to enter a removal order in the first instance. Other circuits have reached the same conclusion. *See Rhodes-Bradford*, 507 F.3d at 81; *Sosa-Valenzuela*, 483 F.3d at 1147; *James v. Gonzales*, 464 F.3d 505, 514 (5th Cir. 2006); *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 883–84 (9th Cir. 2003).

The government responds that the Board "arguably" could qualify as an administrative officer with delegated authority to conduct removal proceedings under § 1101(a)(47)(A). But the Attorney General has not delegated any such authority to the Board. *See Sosa-Valenzuela*, 483 F.3d at 1146–47. Indeed, the INA regulations provide that the Board "shall function as an appellate body," 8 C.F.R. § 1003.1(d)(1), with jurisdiction to hear appeals from "[d]ecisions of Immigration Judges in removal proceedings," *id.* § 1003.1(b)(3).

The government also contends that the Board issues "final orders of its own accord in other circumstances in which

§ 1101(a)(47)(B) would seem to apply." In particular, the Supreme Court has treated the Board's denial of motions to reopen or reconsider like final orders of removal for purposes of review. *See Mata v. Lynch*, 135 S. Ct. 2150, 2154 (2015); *Kucana v. Holder*, 558 U.S. 233, 242 (2010).

Our jurisdiction to review those orders has no bearing on the present analysis. Under the INA we are required to *consolidate* the review of a motion to reopen or reconsider with our review of the underlying order. § 1252(b)(6). Thus, in those cases our jurisdiction depends on whether the underlying order constitutes a final order of removal. *See Mata*, 135 S. Ct. at 2154. And here the underlying order was *not* a final order of removal. Without a final order of removal to review, we lack jurisdiction to address the merits. *See Rhodes-Bradford*, 507 F.3d at 81–82; *Sosa-Valenzuela*, 483 F.3d at 1146; *Noriega-Lopez*, 335 F.3d at 884–85.

Mejia Galindo nevertheless contends that we have jurisdiction because the Board "entered a final order of removal, albeit unlawfully." He relies on *Anderson v. Holder*, 673 F.3d 1089, 1096 (9th Cir. 2012), for the proposition that an improper order is "tantamount to a final order" if it causes an alien material harm. Not so. *Anderson* dealt with the plight of a wrongly deported U.S. citizen, and the court relied in part on an independent jurisdictional provision that required it to evaluate a claim to U.S. citizenship. *See* § 1252(b)(5). That jurisdictional hook does not exist here.

We likewise are not persuaded by Mejia Galindo's other arguments. He asserts that the Board's ultra vires order counts as a reviewable "final agency action" under the Administrative Procedure Act, 5 U.S.C. § 704. But the INA expressly limits our review of Board decisions to a final

order of removal. § 1252(a)(1). Next, Mejia Galindo argues that we have jurisdiction under § 1252(a)(2)(C) to determine if his convictions qualify as controlled-substance offenses. But that provision *removes* our jurisdiction in such cases. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable" under § 1227(a)(2)(B)(i).). The Board's order was a "legal nullity" regardless of its content. *See Noriega-Lopez*, 335 F.3d at 884.

Accordingly, we lack jurisdiction to review the Board's determination that Mejia Galindo's drug-paraphernalia convictions qualify as removable controlled-substance offenses. That does not, however, leave us powerless to unwind the legal error that created the jurisdictional defect. Our jurisdiction to consider our own jurisdiction, *see Muratoski v. Holder*, 622 F.3d 824, 829 (7th Cir. 2010), includes the authority to vacate the Board's decision and remand as a remedy to address the legal error that gave rise to the jurisdictional impediment we have identified. As the Second Circuit has explained:

> It is, of course, the case that we have jurisdiction to determine whether or not we have jurisdiction over a matter. We believe that a necessary concomitant of this jurisdiction is the authority to order a remand to remedy those legal errors we have identified in the course of coming to the conclusion that we have no jurisdiction. … If this were not the case, then there would be no remedy in the courts for *ultra vires* behavior, and this would raise serious due process concerns.

*Rhodes-Bradford*, 507 F.3d at 81 (citation omitted).

We have concluded, in reviewing our jurisdiction, that the Board lacked the authority to issue a removal order in the first instance. As such, its order was ultra vires. We therefore VACATE and REMAND for proceedings consistent with this opinion.