**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 22, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRAYAN ALEXIS OSUNA-
GUTIERREZ, a/k/a Jose Gomez,

     Petitioner,

v.                                                                                          No. 14-9593

JEH C. JOHNSON, Secretary of the
Department of Homeland Security,

     Respondent.

_____

**Petition for Review**
**from of a Decision of the**
**Department of Homeland Security**

_____

Matthew Lorn Hoppock, The Hoppock Law Firm, LLC, Overland Park, Kansas, for
Petitioner.

Greg D. Mack, Senior Litigation Counsel, United States Department of Justice (Benjamin
C. Mizer, Principal Deputy Assistant Attorney General, and Terri J. Scadron, Assistant
Director, Civil Division, with him on the brief), United States Department of Justice,
Washington, D.C., for Respondent.

_____

Before **BRISCOE**, **EBEL**, and **BACHARACH**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

**SUMMARY**

Brayan Alexis Osuna-Gutierrez argues his deportation was improper for two reasons: (1) the Department of Homeland Security's (DHS) expedited removal process is illegal; and (2) in any event, it was improper for DHS to use the expedited removal process on Gutierrez because he pled guilty to a misdemeanor, not a felony. However, Gutierrez is wrong on both counts.

First, Congress specifically empowered the Attorney General to create expedited removal proceedings and properly transferred those powers to the Department of Homeland Security. The fact that an Immigration Judge (IJ) is not involved in the expedited removal process does not make it illegal.

Second, Gutierrez is an illegal alien who pled guilty to an aggravated felony—the federal felony of possession with intent to distribute marijuana. Despite Gutierrez's arguments that he actually pled guilty to a misdemeanor, there was clear, convincing, and unequivocal evidence in the administrative record to support DHS's finding that Gutierrez pled guilty to an aggravated felony and thus was removable via the expedited removal process.

Therefore, we DENY Gutierrez's petition for review.

**BACKGROUND FACTS**

Gutierrez was arrested in March 2014 in Kansas. He was a passenger in a rental vehicle on a cross-country trip. The police found approximately seven grams of marijuana belonging to Gutierrez that he had legally purchased in Colorado.

2

Gutierrez had shared some of the marijuana with passengers in the car. The police also found approximately three kilograms of methamphetamine in the rear portion of the car. The federal government charged Gutierrez and his co-defendants with possession with intent to distribute methamphetamine. Gutierrez ultimately pled guilty to violating 21 U.S.C. § 841(a) and (b)(1)(D) for "Possession of Marijuana with Intent to Distribute." (Admin. Rec. at 16.) The government dropped the methamphetamine charges. The district court sentenced him to time served, approximately seven months.

After leaving jail, Gutierrez was immediately transferred to immigration custody. The Department of Homeland Security (DHS) served Gutierrez with a Notice of Intent to Issue a Final Administrative Removal Order—the expedited removal process. During the expedited removal process, an officer within DHS concluded that Gutierrez was not a legal permanent resident, having come to this country from Mexico with his mother when he was one year old without being legally admitted. Further, Gutierrez had pled guilty to an aggravated felony. The DHS officer made the aggravated felony finding after reviewing the Judgment from Gutierrez's criminal case. Gutierrez timely petitioned for review of his removal and was deported back to Mexico on November 7, 2014.[1]

---

[1] Once an alien is ordered removed, filing the appeal "does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B). Nevertheless, we retain jurisdiction to consider this petition for review, notwithstanding Gutierrez's removal.

## PROCEDURE AND JURISDICTION

Gutierrez is seeking review of a DHS Final Administrative Removal Order (FARO). The Tenth Circuit has jurisdiction to hear this appeal pursuant to 8 U.S.C. § 1252(a)(1). Aguilar-Aguilar v. Napolitano, 700 F.3d 1238, 1240 (10th Cir. 2012); 8 U.S.C. § 1228(b)(3). In examining the order of removal, we decide the issue "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A).

Because Gutierrez was removed as an aggravated felon, under 8 U.S.C. § 1227(a)(2)(A)(iii), the Tenth Circuit's jurisdiction is limited to legal and constitutional claims. The Tenth Circuit is the proper venue because DHS issued the FARO in Wichita, Kansas. 8 U.S.C. § 1252(b)(2).

## STANDARD OF REVIEW

The Tenth Circuit reviews questions of law—including the Court's jurisdiction, whether an offense is an aggravated felony, and constitutional claims— *de novo*. Torres de la Cruz v. Maurer, 483 F.3d 1013, 1018-19 (10th Cir. 2007).

## LEGAL DISCUSSION

I. **DHS officers have the authority to hold expedited removal proceedings without an immigration judge present.**

Gutierrez argues that his order of removal is invalid because only IJs have the power to order removal and the Attorney General's (AG) regulation allowing for expedited removal without an IJ was *ultra vires*. As the following analysis will

4

show, however, Congress specifically empowered the AG to set up expedited

removal and the statute supports the government's position that the AG had the

authority to authorize removal hearings without an IJ.

   *a. The statutory history shows that the Attorney General and Congress properly created and transferred the expedited removal process to DHS.*

  As part of the Illegal Immigration Reform and Immigrant Responsibility Act

of 1996 (IIRIRA), Congress created 8 U.S.C. § 1228(a)(1), which provides that "[t]he

Attorney General shall provide for the availability of special removal proceedings at

certain Federal, State, and local correctional facilities for aliens [convicted of

aggravated felonies or crimes involving moral turpitude]." Pursuant to this statutory

grant, Janet Reno—then the AG—created 62 Fed. Reg. 10312-01 § 238.1 on

February 26, 1997. 62 F.R. 10312-01. Section 238.1 is codified as 8 C.F.R.

§ 1238.1,[2] which outlines the procedure for the expedited removal of immigrants

convicted of aggravated felonies. Initially the agency tasked with expedited removal

was the Immigration and Naturalization Service (INS). However, Congress

abolished the INS in 2003 and transferred its powers, including "all functions

performed under . . . [t]he detention and removal program," to DHS. 6 U.S.C.

§ 251.[3] Thus, Congress gave power to the AG to create an expedited removal

---

[2] There have been minimal changes to the regulation since it was originally promulgated. There are a few language changes and the regulation now accounts for asylum issues, which are not relevant to our case.

[3] Gutierrez argues that "the detention and removal program" only refers to those powers enumerated in 8 U.S.C. § 1231, "Detention and removal of aliens ordered removed." Aplt. R. Br. at 13. But he does not support that argument—there is nothing to indicate that Congress intended "all functions performed under [the

5

program, which the AG created within INS, and Congress later transferred that power to DHS. Therefore, DHS properly has authority to initiate expedited removal proceedings for aggravated felons.

> b. *The statutory text supports the government's position that removal proceedings do not always require an IJ.*

Gutierrez makes several arguments involving the text of the statute. Specifically, he claims that 8 U.S.C. §§ 1252(b)(2) and 1229a(a)(1) require that all removal proceedings occur before an IJ. While the statutes are not explicit about the lack of—or requirement of—IJs in the removal process, the statutes ultimately support the government's position.

The venue portion of § 1252(b)(2) says that a removal order appeal "shall be filed with the court of appeals for the judicial circuit in which *the immigration judge* completed the proceedings." (emphasis added). Gutierrez points out that statutes are to be read in conjunction with each other and § 1252 (the only order-of-removal appeal statute) mentions only IJs and has no provision for orders entered by non-IJs. Thus, Gutierrez reasons, only IJs can enter removal orders.

However, Gutierrez ignores that Congress also created § 1228 which directs the AG to establish expedited removal regulations.[4] Nothing in § 1228 requires that

---

detention and removal program]" to refer only to "detention and removal of aliens ordered removed."

[4] Although neither party spends much time on the argument, § 1228 satisfies the first prong of the test announced in Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 842-43 (1984), because "Congress has directly spoken to the precise question at issue." (i.e., whether the AG had the authority to create expedited removal proceeding regulations). Because "the intent of Congress is clear, that is the

6

an IJ preside over the expedited removal process—in fact, the words "immigration judge" do not appear anywhere in § 1228. At the same time, § 1228 contains specific limits on the AG's expedited removal procedure. Most relevant is § 1228(b)(4)(F), which requires that "the final order of removal is not adjudicated by the same person who issues the charges." However, immigration judges do not issue removal charges. Thus, the language carries the unmistakable inference that Congress did not contemplate that only IJs would issue the removal *orders*. If Congress wanted to require an IJ to hear expedited removal proceedings, it would have noted as such in § 1228(b)(4)(F). Instead, Congress commanded only that someone other than the charging officer preside over expedited removal proceedings and did so in a way that implies that someone other than an IJ can hear the proceeding.

The Eighth Circuit, in <u>Gonzalez v. Chertoff</u>, 454 F.3d 813, 816 n.2 (8th Cir. 2006), noted that

> § 1252(b)(2) refers to the location in which "the immigration judge" completed the removal proceedings, while the expedited removal proceedings established by § 1228(b) do not involve an immigration judge. However, we read the cross-reference to § 1252(b) in the section establishing expedited proceedings as indicating that the same venue rule applies to removal proceedings presided over by any officer of DHS, not just by an immigration judge.[5]

end of the matter." <u>Id.</u> Even if we were to hold that § 1228 is "silent or ambiguous" in regards to whether it requires that IJs oversee expedited removal, we would still hold that 8 C.F.R. § 1238 is "based on a permissible construction of the statute," since nothing in § 1228 requires that an IJ be present. <u>See</u> <u>Chevron</u>, 467 U.S. at 842-43.

[5] The "cross-reference" mentioned in <u>Gonzalez</u> is § 1228(c)(3)(A)(ii), "Except as provided in clause (iii), such appeal shall be considered consistent with the requirements described in section 1252 of this title."

7

(footnote added).  This is a far more plausible reading of the combined statutes than Gutierrez urges.  His § 1229a(a)(1) argument is even less convincing.

In § 1229a(a)(1), the statute states that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."[6]  Gutierrez urges the Panel to find that this language forecloses anyone other than an IJ from ordering removal.  However, § 1229a(a)(1) must be read in conjunction with § 1229a(a)(3), which states, "Nothing in this section shall affect proceedings conducted pursuant to section 1228 of this title" (§ 1228 being the expedited removal process).  Thus, § 1229a(a)(1)'s requirement that an IJ order removal cannot limit the expedited removal process where DHS has proper authority to hold expedited removal processes in front of its officers.

## II.     DHS's removal of Gutierrez was based on clear and convincing evidence and complied with Supreme Court law.

Gutierrez argues that his removal was improper because (1) the administrative record relied on by DHS did not contain clear and convincing evidence of his removability and (2) under Supreme Court precedent, the aggravated felony for which he was removed was actually a misdemeanor.  As the following analysis will show, however, (1) DHS properly relied on Gutierrez's guilty plea to a felony charge;

---

[6] Gutierrez also cites to several cases in which the court says, "[I]mmigration judges alone have the authority to determine whether to deport an alien."  Aplt. Br. at 15, citing United States v. Zamudio, 718 F.3d 989, 990 (7th Cir. 2013); United States v. Romeo, 122 F.3d 941, 943 (11th Cir. 1997).  However, those cases were not about expedited removal.  Rather, the appellate courts were chastising *district courts* that had imposed deportation and immigration consequences as part of a criminal conviction without also ordering supervised release—an action for which there is no authority and is not at issue in this case.

8

and (2) even considering <u>Moncrieffe v. Holder</u>, 133 S. Ct. 1678 (2013), the crime to which Gutierrez pled guilty was, in fact, a felony.

### a. An overview of the Final Administrative Removal Order (FARO) Process

As noted above, 8 U.S.C. § 1228 and 8 C.F.R. § 1238.1 properly authorize DHS to initiate expedited removal proceedings and issue Final Administrative Removal Orders (FARO) without the involvement of an immigration judge. Under § 1228 and § 1238.1, DHS can initiate FARO proceedings when a person (1) is an alien; (2) was not lawfully admitted for permanent residence; (3) was convicted of an aggravated felony; and (4) is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). The parties both admit that (1) and (2) are met here, but argue over whether Gutierrez was actually convicted of an aggravated felony (which would satisfy prongs (3) and (4)).

Under 8 U.S.C. § 1101(a)(43)(B), the term "aggravated felony" includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c) states that a "drug trafficking crime" means "any felony punishable under the Controlled Substances Act" (which includes the statute at issue here, § 841). A crime is a felony if the "maximum term of imprisonment *authorized*" is "more than one

9

year." 18 U.S.C. § 3559(a) (emphasis added).[7]  Therefore, to be an aggravated felony under § 1101(a)(43)(B), Gutierrez's conviction must be for a federal drug trafficking felony—although he argues that he was actually guilty of only a misdemeanor.

In order to issue a FARO, the presiding DHS officer must find removability by "clear, convincing, and unequivocal evidence."  8 C.F.R. § 1238.1.  That clear, convincing, and unequivocal standard; whether DHS satisfied it; and whether Supreme Court law contradicts DHS's findings form the remaining issues in this appeal.

          b.     *The administrative record contained clear, convincing, and unequivocal evidence of Gutierrez's removability.*

Gutierrez argues that "there is nothing in the administrative record to indicate that [the district court judge] did not intend to treat the crime as a misdemeanor." Aplt. Br. at 28.  He further argues there was no evidence that his conviction was for a federal drug trafficking felony, thus his federal conviction was for a misdemeanor drug offense.  And it is true that, while possession of less than fifty kilograms of marijuana with intent to distribute is a felony, distribution of a small amount of marijuana for no remuneration is a misdemeanor.  See Moncrieffe, 133 S. Ct. at 1678.  Gutierrez's conduct, as he argues it, could fall under either category. However, while his conduct may have supported a lesser conviction, he pled guilty to a felony.

---

[7] There is more to the FARO process, but none of it is relevant to this appeal (e.g., cannot apply for relief from removal, the process of the hearing itself, etc.).

The only document relating to Gutierrez's criminal conviction in the administrative record is the district court's "Judgment in a Criminal Case."[8] Admin. Rec. at 16. That judgment by itself establishes that Gutierrez pled guilty to a felony for three reasons.

First, the judgment listed the crime of conviction as a violation of 21 U.S.C. § 841(a) and (b)(1)(D), and listed the offense as a "Class D Felony." Admin. Rec. at 16. There is no mention of (b)(4), the misdemeanor provision. Several courts, including the Tenth Circuit, have noted that (b)(1)(D), the felony, is the "default" drug trafficking provision for marijuana because it is the subsection "which states a complete crime upon the fewest *facts*." United States v. Outen, 286 F.3d 622, 637 (2d Cir. 2002) (emphasis in original); see United States v. Eddy, 523 F.3d 1268, 1271 (10th Cir. 2008) (agreeing with Outen and noting that (b)(1)(D) does not contain the element "remuneration," while (b)(4) requires the extra element of "no remuneration").[9]

---

[8] Under 8 U.S.C. § 1229a(c)(3)(B)(i), an "official record of judgment and conviction" constitutes satisfactory proof of a criminal conviction. Gutierrez takes issue that the DHS did not consider additional documents, but cites no authority for requiring DHS to do so—nor does he cite authority for his argument that it was DHS's job to discern whether the 841(b)(1)(D) misdemeanor exception applied. Aplt. Br. at 24. Statutory law demands that we decide this petition "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). In any event, even if we were to examine the additional documents Gutierrez submitted in his appendix, we would still find that he pled guilty to a felony. See Aple. App. at 3, 5, 16, 17.

[9] Gutierrez argues that Outen holds, "the fact that the charge listed in the charging document describes the crime as a 'felony' is not relevant." Aplt. Br. at 25. Outen does not hold that.

11

Second, the judgment indicated that the district court ordered a term of two years' supervised release for Gutierrez. Admin. Rec. at 18. Gutierrez never challenged this term. Under 18 U.S.C. § 3583(b), if Gutierrez was sentenced to a misdemeanor, his maximum term of supervised release would have been one year. But for a Class D felony, he could receive up to three years. 18 U.S.C. § 3583(b).

Finally, one of Gutierrez's supervised release conditions was that he could not purchase or possess a firearm. Admin. Rec. at 18. Under U.S.S.G. § 5D1.3(d)(1), firearm restrictions for supervised release are only appropriate in two circumstances: (1) when the defendant used a gun to commit his crime (not at issue here); and (2) when the defendant was convicted of a felony. For these reasons, the district court's judgment made it clear that Gutierrez pled guilty to a felony rather than a misdemeanor.

Gutierrez argues, to the contrary, that because he received only seven months' imprisonment, the district court must have meant to punish him for a misdemeanor.[10] However, a felony conviction does not require a penalty *imposed* of at least one year—a crime is a felony if the district court *could* impose more than a year imprisonment. 18 U.S.C. § 3559(a). Further, the other factors—the length of supervised release and the firearm restriction—are only applicable when the defendant is guilty of a felony. 18 U.S.C. § 3583(b); U.S.S.G. § 5D1.3(d)(1). Thus,

---

[10] At oral argument, counsel for Gutierrez disingenuously argued that Gutierrez pled guilty to a misdemeanor because his base offense level was a four. But that was not correct. Gutierrez's base offense level was six. He then received a two-level reduction for acceptance of responsibility, lowering his total offense level to four. Aple. App. at 11.

12

there was enough evidence in the administrative record that DHS could find it was clear, convincing, and unequivocal that Gutierrez pled guilty to—and was sentenced for—committing a felony.

### c. Under *Moncrieffe*, Gutierrez still pled guilty to a felony.

Gutierrez argues that Moncrieffe resolves this entire case because his conduct was similar to Moncrieffe's. The Supreme Court ruled that Moncrieffe's state felony conviction for possession with intent to distribute marijuana was not categorically punishable as a federal aggravated drug-trafficking felony because the state statute did not require a finding of remuneration. Moncrieffe, 133 S. Ct. at 1693-94. Unfortunately for Gutierrez, his case is not Moncrieffe and it does not provide him relief.

In Moncrieffe, the defendant was removed after the Board of Immigration Appeals determined that his state law felony conviction was punishable under federal law as an aggravated felony. Id. at 1680. Moncrieffe was convicted of a felony under a Georgia statute for possession of marijuana with intent to distribute. Id. at 1683. In determining whether Moncrieffe's conduct was punishable as a federal felony drug trafficking offense, the Supreme Court looked at the analogous federal generic crime statute, 21 U.S.C. 841(b). The Supreme Court determined that the Georgia statute was not divisible and because the federal statute calls for two different crimes in the alternative—one, a felony, for possession with intent to distribute less than fifty kilograms of marijuana (841(b)(1)(D)); the other, a misdemeanor, for possessing a small amount and distributing it for no remuneration

13

(841(b)(4))—the categorical approach was the proper method for categorizing the state conviction. Id. at 1686.

The Supreme Court noted that the "elements" of the crime were found in 841(b)(1)(D) and that 841(b)(4) was a "sentencing factor." Id. at 1689. Because the Georgia statute did not require remuneration (there was a different Georgia statute for "selling" drugs), Moncrieffe could have been convicted under the federal felony or misdemeanor provision, thus his conviction did not "necessarily involve facts that correspond to an offense punishable as a felony under the CSA." Id. at 1687 (quotations omitted). Therefore, the Supreme Court held that "[s]haring a small amount of marijuana for no remuneration" did not fit into the "everyday understanding of trafficking," and "[i]f a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, the conviction is not for an aggravated felony under the INA." Id. at 1693-94 (internal quotation marks omitted). But the Supreme Court also noted that federal prosecutions are different and may be subject to a different process than it employed to analyze Moncrieffe's state conviction. Id. at 1688-90. And as a federal prosecution, Gutierrez's case is different from Moncrieffe's.

While Moncrieffe's and Gutierrez's criminal conduct were similar, their convictions were not—an ultimately fatal flaw to Gutierrez's appeal. Gutierrez was not convicted of a state crime to be compared to a federal generic crime on appeal.

14

He knowingly pled guilty to a federal felony.[11]  Therefore, DHS properly ordered him removed via the FARO process.[12]

## CONCLUSION

The AG properly delegated power to DHS and ICE to perform expedited removal proceedings without an IJ present.  There was clear, convincing, and unequivocal evidence of Gutierrez's removability in the administrative record.  Therefore, we DENY Gutierrez's petition for review.[13]

---

[11] Also, while Gutierrez could arguably have been convicted of (or sentenced to) the lesser § 841(b)(4) crime, "when an act violates more than one criminal statute, the Government may prosecutes [sic] under either so long as it does not discriminate against any class of defendants."  United States v. Batchelder, 442 U.S. 114, 123-24 (1979).  Gutierrez has not argued on appeal that his conviction was discriminatory.

[12] Because we find that DHS properly removed Gutierrez based on the administrative record and his federal felony guilty plea, we do not need to apply the modified categorical approach to his conviction.

[13] We grant petitioner's motion to proceed in forma pauperis.

15