**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 22, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LINA THOUNG,

       Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

       Respondent - Appellee.

No. 17-3220

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 5:17-CV-03032-EFM)**

Matthew L. Hoppock, The Hoppock Law Firm, LLC, Overland Park, Kansas, for Petitioner-Appellant.

Jared S. Maag, Assistant United States Attorney (Stephen R. McAllister, United States Attorney, District of Kansas, and James A. Brown, Assistant United States Attorney, Chief, Appellant Division, with him on the briefs), Office of the United States Attorney, Topeka, Kansas, for Respondent-Appellee.

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **PHILLIPS**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

Lina Thoung illegally entered the United States in 2002. After the government learned of her illegal status, she jointly stipulated to a removal order

after pleading guilty in district court to document fraud. But deportation proceedings never occurred. Five years later, she filed a writ of habeas corpus with the district court alleging the court had lacked subject-matter jurisdiction to enter its order of removal. The district court reaffirmed its jurisdiction to order removal and rejected Thoung's habeas petition.

We hold that, because of the REAL ID Act's limitations on judicial review, the district court lacked jurisdiction to entertain Thoung's habeas petition challenging the prior removal order.

## I. Background

Thoung emigrated from Cambodia to the United States in 2002 using a fraudulently obtained visa in the name and birthdate of another person. In 2007, she obtained U.S. citizenship and affirmed she had never provided false information to any government official while applying for any immigration benefit.

Her fraud was discovered in 2012. She subsequently pleaded guilty to misusing a visa, permit, and other documents to obtain citizenship, in violation of 18 U.S.C. § 1546(a). As part of her plea agreement, she jointly stipulated to denaturalization under 8 U.S.C. § 1451(e) and removal from the United States. Relying on 8 U.S.C. § 1228(c)(5), the district court entered an order of removal. Immigration authorities, unable to deport Thoung back to Cambodia, eventually

released her subject to an Order of Supervision. Under this order, Thoung could be arrested and deported at any time.

In 2017, Thoung filed a writ of habeas corpus—apparently under 28 U.S.C. § 2241—alleging the district court had lacked subject-matter jurisdiction to enter the judicial removal order requested under the plea agreement. Neither the government nor the district court considered the potential applicability of the REAL ID Act, 8 U.S.C. § 1252, and the substantial limitations it imposes on judicial review. On the merits, the district court reaffirmed its jurisdiction to enter Thoung's removal order. Thoung appealed the district court's assertion of subject-matter jurisdiction to enter the 2013 removal order.

## II. Analysis

We first consider whether the district court had subject-matter jurisdiction to hear Thoung's habeas petition, a question of statutory interpretation. *Gonzales-Alarcon v. Macias*, 884 F.3d 1266, 1273 (10th Cir. 2018). We conclude the REAL ID Act prevents the district court from exercising habeas jurisdiction to hear Thoung's petition.

### A. The REAL ID Act's Limitations on Judicial Review

Generally, "[w]rits of habeas corpus may be granted by . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A person must be "in custody" to seek the habeas writ, *id.*

§ 2241(c)(1), and a person subject to removal is "in custody" for habeas purposes. *See Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291 (10th Cir. 2001).

Nevertheless, the REAL ID Act imposes substantial limitations on judicial review, including habeas review, of final orders of removal. Removal orders may be challenged only by way of a petition for review filed in the court of appeals. According to § 1252(a)(5), "petitions for review" filed with the courts of appeal are the "sole and exclusive means for judicial review from an order of removal." And the statute specifically excludes "habeas corpus review pursuant to sections 1241 . . . or any other habeas corpus provision." *Id.*[1] That "sole and exclusive means for judicial review from an order of removal" is outlined in § 1252(b), which requires that a petition for review must be filed within thirty days of a final order of removal. *Id.* § 1252(b)(1). "That deadline is mandatory and jurisdictional; it is not subject to equitable tolling." *Gonzales-Alarcon*, 884 F.3d

---

[1] In full, section 1252(a)(5) provides:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review from an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

at 1271. Thus, although the REAL ID Act permits "review of constitutional claims or questions of law raised upon a petition for review," 8 U.S.C. § 1252(a)(2)(D), an individual petitioning for review cannot challenge a removal order once judicial review is time-barred, *see Gonzales-Alarcon*, 884 F.3d at 1271. By the time Thoung filed her habeas petition with the district court, the deadline for properly filing a petition for review in accordance with the REAL ID Act had long expired.

In *Gonzales-Alarcon*, we emphasized that "Congress clearly intended to funnel all challenges to removal through the petition for review process." *Id.* at 1278. We held that "[u]nder the plain language of [§ 1252(a)(5)], a habeas challenge to an order of removal is barred regardless of whether the petitioner is an alien or claims citizenship." *Id.* at 1274.

Our circuit is consistent with others in recognizing the REAL ID Act's limitations on habeas review. *See Andrade v. Gonzales*, 459 F.3d 538, 542 (5th Cir. 2006) ("The REAL ID Act divests the district courts of jurisdiction over the habeas petitions of aliens; instead, REAL ID Act § 106 states that 'a petition for review shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of [the Immigration and Nationality Act].'"); *Marquez-Almanzar v. INS*, 418 F.3d 210, 215 (2d Cir. 2005) (REAL ID Act "unequivocally eliminates habeas corpus review of orders of removal.").

Because Thoung's habeas petition ultimately seeks to invalidate the district court's removal order, we conclude she is seeking "judicial review of an order of removal" in a manner prohibited by § 1252(a)(5).

**B. *The REAL ID Act Eliminates Jurisdiction to Entertain Thoung's Habeas Petition***

Nevertheless, Thoung raises three arguments to support her claim that the district court had proper jurisdiction to entertain her habeas petition.

All three ultimately fail.

**1. *Orders Arising from Criminal Proceedings***

First, Thoung contends Congress did not intend to bar habeas review of judicial removal orders because she claims the Act omits orders arising from criminal proceedings that result in removability. The criminal offenses which are grounds for removability are set forth in 8 U.S.C. § 1227(a)(2). She relies on *INS v. St. Cyr*, 533 U.S. 289 (2001), which held that AEDPA's limitations on habeas review did "not bar jurisdiction over removal orders *not* subject to judicial review under § 1252(a)(1)—including orders against aliens who are removable by reason of having committed one or more criminal offenses." *Id.* at 313.

But Thoung's interpretation misreads the REAL ID Act, which was adopted in 2005 to render the removal-challenge process consistent with *St. Cyr*. *See* 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 41.1, at 2208–15 (6th ed. 2011). The REAL ID Act expressly divests

-6-

district courts of jurisdiction over habeas challenges to removal orders, including those arising from criminal offenses, and funnels all such challenges to the "appropriate court of appeals" as the "sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter [including § 1228(c)(5)]." *See* 8 U.S.C. § 1252(a)(5).[2]

If every judicial order of removal were subject to appeal for lack of subject-matter jurisdiction, the statutory framework Congress established in § 1252(b) could be entirely thwarted and a multiplicity of claims (including habeas claims) would thrive outside the petition-for-review process and long after its timeliness requirements have expired.

Because the district court's judicial order of removal was entered under § 1228(c)(5), the judicial process established by the REAL ID Act is Thoung's sole means of challenging her judicial removal order—a means that is now time-barred. To comply with § 1252(a)(5), Thoung would have had to petition the court of appeals within thirty days of the district court's entry of the final removal order in 2013. Despite having the opportunity to do so, she did not.

### 2. *Suspension Clause*

---

[2] Even if, *arguendo*, a judicial order of removal must, as a procedural prerequisite, first be based on a criminal ground of removability described in 8 U.S.C. § 1227(a)(2), the REAL ID Act explicitly bars habeas review of such orders in § 1252(a)(2)(C).

Second, Thoung argues that even if Congress did intend to bar habeas review of judicial orders of removal, it has left no meaningful alternative form of review and therefore has unconstitutionally suspended the writ of habeas corpus. The Suspension Clause states, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Thoung relies on *St. Cyr*'s warning that "a serious Suspension Clause issue would be presented if [a statute has] withdrawn that power from federal judges and provided no adequate substitute for its exercise." 533 U.S. at 304–05.

But *St. Cyr* goes on to observe "that Congress could, without raising any constitutional questions, provide an adequate substitute through the court of appeals." *Id.* at 314 n.38. "'The substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention' does not violate the Suspension Clause." *Id.* (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977) (alteration omitted)). This is, of course, precisely the sort of process that the REAL ID Act established in 8 U.S.C. § 1252(a)(5) and § 1252(b).[3]

_____

[3] Although the text of the Act is clear, the House-Senate Conference Report on the REAL ID Act further explained:

Significantly, this section [§ 1252] does not eliminate judicial review, but simply restores such review to its former settled forum prior to 1996. Unlike AEDPA and IIRIRA, which attempted to eliminate judicial review of criminal aliens' removal orders, [this section] would give every alien one
(continued...)

-8-

Thoung bears the burden of demonstrating the inadequacy of the REAL ID Act's substitute for statutory habeas jurisdiction. *See Miller v. Marr*, 141 F.3d 976, 977 (10th Cir. 1998). Thoung has not met her burden of demonstrating, in the context of judicial orders of removal, that the REAL ID Act's petition for review process is an inadequate or ineffective substitute. It is not clear that, had Thoung followed the § 1252(b) review process, she would have been prevented from doing so for jurisdictional reasons.[4]

Thus, in the absence of persuasive argument to the contrary, we assume the REAL ID Act's petition for review process does not offend the Suspension Clause with respect to Thoung's judicial removal order. *See Gonzales-Alarcon*, 884 F.3d

_____

[3](...continued)
day in the court of appeals, satisfying constitutional concerns.

151 Cong. Rec. 8526 (2005) (Joint-House-Senate Conference Report) (citing *St. Cyr*, 533 U.S. at 314 n.38).

[4] Thoung points to our unpublished disposition in *Musau v. Carlson*, 499 F. App'x 837 (10th Cir. 2012), for support, but that decision does not undermine our conclusion that *Gonzalez-Alarcon* controls. In *Musau*, a panel of this court simply determined that the district court's dismissal of Musau's habeas petition was "premature" and remanded the question for further consideration. *Id.* at 841.
    The dissent in the instant case suggests this court would have lacked jurisdiction to reach the merits of Thoung's appeal had she followed the REAL ID Act's petition-for-review process. But it does not necessarily follow that such a result would implicate the Suspension Clause. The authority on which the dissent relies suggests this court still could have vacated an *ultra vires* removal order and remanded for further proceedings. *See Mejia Galindo v. Sessions*, 897 F.3d 894, 898–99 (7th Cir. 2018); *Rhodes-Bradford v. Keisler*, 507 F.3d 77, 81–82 (2d Cir. 2007). Thus, a presumably adequate forum would have existed to test the legality of Thoung's detention.

at 1268 (assuming "the petition for review process is an adequate substitute for habeas such that the REAL ID Act's jurisdiction-stripping provisions do not offend the Suspension Clause").

### 3. Conflict with Federal Rules

Finally, Thoung asserts that our interpretation of the REAL ID Act results in unintended consequences. Because the Act's review process requires a petition to be filed with the court of appeals within thirty days of an order of removal, Thoung argues that it conflicts with the federal rules of procedure concerning criminal appeals. *Compare* Fed. R. App. P. 4(b)(1) (requiring a defendant's notice of appeal from a criminal case to be filed in the district court within fourteen days) *with* 8 U.S.C. § 1252(a)(5) (requiring the petition to be filed in the court of appeals) *and id.* § 1252(b)(1) (stipulating the petition must be filed within thirty days after a final order of removal). Assuming that Rule 4(b)(1) of the Federal Rules of Appellate Procedure is the correct one to apply in Thoung's situation, the incongruity should not be surprising. REAL ID's petition for review process is a substitute for the statutory writ of habeas corpus, which is also subject to timeliness limitations that sometimes depart from and supersede the otherwise-applicable federal rules. *See, e.g.*, 28 U.S.C. § 2255(f). Moreover, unlike Rule 4(b)(1), which does "not have statutory grounding" and is non-jurisdictional, *United States v. Garduno*, 506 F.3d 1287, 1290 (10th Cir. 2007),

-10-

the REAL ID Act's timeliness requirement is both "mandatory and jurisdictional," *Gonzales-Alarcon*, 884 F.3d at 1271.

Thoung also asserts that barring habeas review would strip district courts of the power to reconsider their own orders, while immigration judges possess that authority. *See* 8 C.F.R. § 1003.23 (2018) (immigration judge authority to reopen and reconsider); *id.* § 1003.2 (Board of Immigration Appeals authority to reopen and reconsider); *id.* § 1005 (DHS authority to reopen and reconsider). But the only case Thoung cites for the proposition that district courts possess inherent authority to reconsider their own removal orders refers to the power to reconsider interlocutory orders and not final orders. *See Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007). Even if the district court possessed inherent authority to reopen and reconsider its final order of removal under the circumstances presented here, it certainly could not do so "by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision," 8 U.S.C. § 1252(a)(5). This is precisely what the REAL ID Act prohibits. Thoung's suggestion that we read "judicial review" under § 1252(a) as referring only to appellate review, *see St. Cyr*, 522 U.S. 311 (noting the "historically distinct" meanings of "judicial review" and "habeas corpus"), is foreclosed by the text of the Act itself. *See* 8 U.S.C. § 1252(a)(5) ("For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the

terms 'judicial review' or 'jurisdiction to review' include habeas corpus review.").[5]

Because none of Thoung's arguments ultimately persuade us that our interpretation of the REAL ID Act is incorrect, we hold that the statute's jurisdictional limitation on judicial review of removal orders prevents Thoung from petitioning the district court for the writ of habeas corpus.

## III. Conclusion

Because the district court lacked subject-matter jurisdiction and thus lacked power to enter its October 2017 Memorandum and Order, that judgment must be vacated. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1128 (10th Cir. 2010).

We therefore REMAND to the district court with directions to VACATE its October 2017 order and to dismiss Thoung's petition without prejudice for lack of

---

[5] Similarly, we do not find persuasive Thoung's argument that the venue section of § 1252(b)(2) is limited to orders entered by immigration judges. That provision may encompass district court judges, as evidenced by § 1228(c)(3)(A)(i)–(ii), which clarifies that a "judicial order of removal . . . may be appealed . . . to the court of appeals for the circuit in which the district court is located" and that "such appeal shall be considered consistent with the requirements described in section 1252 of this title."

Furthermore, more specific language in related immigration statutes may trump the general language of § 1252(b)(2) regarding immigration judges when such language operates notwithstanding any other provision. *See Osuna-Guiterrez v. Johnson*, 838 F.3d 1030, 1034–35 (10th Cir. 2016). Such "notwithstanding any other provision" language is present in § 1228(c)(1).

jurisdiction. We express no view as to the merits and leave the district court's

2013 removal order undisturbed.

*Thoung v. United States*, No. 17-3220

**PHILLIPS**, J., dissenting.

In September 2002, Lina Thoung entered the United States on a visitor visa belonging to another Cambodian woman, Sokheang Leng. The next year, Thoung succeeded in adjusting her immigration status to lawful permanent resident, which allowed her to stay in the United States indefinitely. Then, in March 2007, she applied for citizenship. In the form she submitted to the Department of Homeland Security, she affirmed that she had never provided false information to the government in any application for a government benefit. And six months later, in September, she became a naturalized U.S. citizen. That day, she also submitted a name-change request so that her certificate of naturalization would be issued in a new name: Lina Sokheang Lanham.

In 2012, Thoung obtained a passport, but her new identity began to unravel. The State Department opened a passport investigation, and agents discovered her years-long immigration fraud. In July 2012, when the agents detained Thoung, she was carrying a Kansas driver's license and a Social Security card, both built on her fraudulent visa identity. The Kansas U.S. Attorney charged her with eight counts related to her fraudulently obtaining government documents. By December 2012, the parties had reached a plea agreement. Thoung pleaded guilty to one count of document fraud, for violating 18 U.S.C. § 1546(a), and the government dismissed the remaining counts. In the plea agreement, Thoung admitted (1) that she had used a fraudulent visa to enter the country; (2) that while here, she had parlayed the fraudulent visa (and the false information it contained) into a naturalization certificate and other government-issued

documents; and (3) that she had knowingly committed these frauds. She also stipulated that the government could revoke her U.S. citizenship under 8 U.S.C. § 1451(e), and she agreed "to enter into a Joint Stipulation for Judicial Removal" under 8 U.S.C. § 1228(c)(5).

On January 23, 2017, the district court issued the requested judicial removal order, under 8 U.S.C. § 1228(c)(5). Appellant's App. at 47. The court ordered Thoung removed to Cambodia. Immigration and Customs Enforcement immediately took Thoung into custody. After six months passed without Thoung's being deported to Cambodia, immigration authorities released her subject to an Order of Supervision. Under this order, Thoung has remained in the United States, subject to arrest and deportation.[1]

In February 2017, now represented by an immigration attorney, Thoung petitioned for a writ of habeas corpus before the same district court that had handled her criminal proceedings. This time, she argued that the sentencing court had lacked jurisdiction to enter the order of removal under § 1228(c)(5) because she was not removable under § 1227(a)(2)(A).[2] The district court denied Thoung's habeas petition, rejecting Thoung's argument that it had lacked jurisdiction to enter the 2013 removal order. *Thoung v.*

---

[1] Thoung has since married a U.S. citizen. Absent the removal order, she would be eligible to adjust her immigration status on that basis.

[2] In its Order of Removal filed on May 13, 2013, the district court ordered Thoung removed from this country for her § 1546(a) conviction, which, the district court ruled, fit under § 1227(a)(1)(A) and § 1227(a)(3)(B).

2

*United States*, Case No. 17-3032-EFM, 2017 WL 4536421 (D. Kan. Oct. 11, 2017).

Thoung appealed.

Before oral argument, we asked for supplemental briefing on whether the district court had jurisdiction to consider Thoung's petition, directing the parties' attention to 8 U.S.C. § 1252(a)(5).[3] Relying on that statute, the majority now concludes that the district court lacked subject-matter jurisdiction to consider Thoung's habeas petition. Maj. op. at 5–7. In doing so, it relies on these words from § 1252(a)(5): "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ." Maj. op. at 4 (quoting 8 U.S.C. § 1252(a)(5)). In turn, the majority notes that § 1252(b)(1) requires that such a petition be filed not later than 30 days after the date of the final order of removal. *See id.* at 5. Because Thoung never filed a petition for review, the majority holds that she has waived her right to appellate review. *Id.*

In my view, the majority's statutory interpretation is incomplete. More fully read, § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal *entered or issued under any provision of this chapter* . . . ." (emphasis added). With the italicized language restored, § 1252(a)(5) takes on a different meaning. Now it requires more than a district-court document entitled "Order of

---

[3] Congress restricted the scope of judicial review in immigration proceedings in the REAL ID Act. Pub. L. No. 109-13, Div. B, 119 Stat. 231, 302–23; 8 U.S.C. § 1252.

3

Removal." Instead, it requires a hard look at the statutory legitimacy of an Order of Removal. And that takes me to a question the majority's opinion doesn't reach: Did § 1228(c)(5) authorize the district court to enter Thoung's Order of Removal?

To answer that question, it helps to step back to Thoung's document-fraud prosecution. Though Thoung could stipulate to an order of removal, she could not stipulate to expand the district court's subject-matter jurisdiction. Section 1228(c)(5)'s limits confined the parties and the district court.

This takes us to the language of § 1228(c)(5)—the statutory section the district court relied on to do just that. This subsection reads as follows:

**(5) Stipulated judicial order of removal**

The United States Attorney, with the concurrence of the Commissioner [of Immigration and Naturalization], may, pursuant to Federal Rule of Criminal Procedure 11, enter into a plea agreement which calls for the alien, who is deportable under this chapter, to waive the right to notice and a hearing under this section, and stipulate to the entry of a judicial order of removal from the United States as a condition of the plea agreement or as a condition of probation or supervised release, or both. The United States district court, in both felony and misdemeanor cases, and a United States magistrate judge in misdemeanor cases, may accept such a stipulation and shall have jurisdiction to enter a judicial order of removal pursuant to the terms of such stipulation.

§ 1228(c)(5).

To understand this subsection, I think a good starting place is to ask what jurisdictional requirements it puts on judicial removal orders. For me, it helps to isolate what's required. First, the government and Thoung must enter a plea agreement under Fed. R. Crim. P. 11 (satisfied). Second, Thoung must be deportable under this chapter [Chapter 12, Immigration and Nationality] (satisfied). Third, the plea agreement must call

4

for Thoung to "waive the right to notice and a hearing under this section" [§ 1228 "Expedited removal of aliens convicted of committing aggravated felonies"] (*un*satisfied). Thoung's plea agreement says nothing about her waiving notice and hearing rights under § 1228. And for good reason. Only noncitizens convicted of crimes more serious than Thoung's (those falling under § 1227(a)(2)(A)) even *can* stipulate to judicial removal. This is evident when we apply "under this section," just as § 1228(c)(5) tells us to do.

Who can waive rights to notice and hearing "under this section [§ 1228]"? Let's run through the whole section, starting with § 1228(a). That subsection ties "the availability of special removal proceedings" at certain correctional facilities to "aliens convicted of any criminal offense covered in section 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1227(a)(2)(A)(i) of this title." Next, let's turn to § 1228(b). That subsection speaks to "the deportability of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony)." Finally, and most importantly since the operative § 1228(c)(5) is nestled within it, let's turn to § 1228(c). Here, we see that 1228(c)(1)–(3) speaks to defendant noncitizens with criminal convictions covered by § 1227(a)(2)(A).

Now let's remember how the district court correctly classified Thoung's conviction—under § 1227(a)(1)(A) and § 1227(a)(3)(B). From this, I believe that Thoung never had a right to notice or hearing "under this section [§ 1228]," so she obviously

5

never could have waived it. Had Thoung tried to waive section 1228 rights to notice and hearing, the waiver would be meaningless. Simply put, Congress has not authorized stipulated judicial removal orders for noncitizens convicted of her crime.

The parenthetical "deportable under this chapter" does not change this. That language merely sets a threshold condition, but it does not authorize stipulated removal orders against *all* deportable persons. After all, not all deportable persons are even convicted criminals,[4] yet § 1228(c)(5) authorizes removal orders only when stipulated between the parties in plea agreements of noncitizens convicted of § 1227(a)(2)(A) crimes.

The government contends that Thoung is attempting to "graft[] the requirements of § 1228(c)(2)(B) onto § 1228(c)(5)." Appellee's Br. at 14. But the government's position has wavered. The Department of Justice's Criminal Resource Manual[5] states that "stipulated judicial deportation should be sought only if the offense to which the alien defendant will plead guilty causes him to be deportable under 8 U.S.C. § 1251(a)(2)(A)."[6] Thoung's App. at 63. I agree that resource manuals are not law and

---

[4] Many noncitizens become deportable without a criminal conviction—for instance, the noncitizen who overstays his work visa. *See* § 1227(a)(1)(C)(i).

[5] U.S. Dep't of Justice, U.S. Attorneys' Manual, tit. 9, Criminal Resource Manual § 1929, available at https://www.justice.gov/jm/criminal-resource-manual-1929-stipulated-judicial-deportation.

[6] 8 U.S.C. § 1251(a)(2)(A) has since been moved, with some minor changes, to § 1227(a)(2)(A). *Compare* 8 U.S.C. § 1252(a)(2)(A) (1994) (listing "general crimes"), *with* 8 U.S.C. § 1227(a)(2)(A) (listing "general crimes").

that § 1228(c)(5) was enacted after this manual was written. But the same basic scheme was in place when the government interpreted as it did in its manual. The government has not chosen to revise the manual since the enactment of § 1228(c)(5).[7]

Even an ambiguity in § 1228(c)(5) on these points likely would not change the result. After all, we resolve statutory ambiguities in the noncitizen's favor "because deportation is a drastic measure and at times the equivalent of banishment o[r] exile." *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948); *see also United States v. Phommachanh*, 91 F.3d 1383, 1385 (10th Cir. 1996) ("In construing § 3583(d), a deportation statute, we are mindful of 'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.'") (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987)).

Even if the government could surmount these problems, another serious problem would await it—the canon of constitutional avoidance. *See INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001) (stating that "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' . . . we are obligated to construe the statute to avoid such problems."). By interpreting § 1252(a)(5) as it does, the majority risks a Suspension Clause violation.

---

[7] The government notes that this section is currently labeled "Outdated-pending revision." Government's Resp. Br. at 17. It appears that the government added this label at some point between March and May of 2017, well after Thoung filed her habeas petition. *Compare* https://web.archive.org/web/20170328183729/https://www.justice.gov/usam/criminal-resource-manual-1929-stipulated-judicial-deportation *with* https://web.archive.org/web/20170501014453/https://www.justice.gov/usam/criminal-resource-manual-1929-stipulated-judicial-deportation.

Barring Thoung from pursuing habeas relief, the majority leaves her with a bare right to file a petition for review within thirty days of the issuance of her removal order. Maj. op. at 7.

But if the district court did exceed its jurisdiction under § 1228(c)(5) by entering the removal order, then that would cast serious doubt on whether the order is a "final order of removal" under § 1252(a). If the removal order were ultra vires, we would have lacked jurisdiction to consider a timely petition for review from Thoung.[8] *Cf. Mejia Galindo v. Sessions*, 897 F.3d 894, 898–99 (7th Cir. 2018) (reasoning that because the Board of Immigration Appeals lacked authority to enter a final removal order, the order was ultra vires and the court had no jurisdiction to address the petition's merits); *Rhodes-Bradford v. Keisler*, 507 F.3d 77, 81–82 (2d Cir. 2007) (same).

If that is so, the right to petition for review could not adequately substitute for a habeas application. Hence my Suspension Clause concerns. *See* U.S. Const. art I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); *Anderson v. Holder*, 673 F.3d 1089, 1095 (9th Cir. 2012) ("Because the REAL ID Act of 2005 eliminated habeas review of removal orders, leaving petitions for review as the exclusive means to

---

[8] Nor could § 1252(a)(2)(D) have acted as a safety valve for Thoung's claim. That provision states that nothing in § 1252 "which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition of review filed with an appropriate court of appeals *in accordance with this section.*" *Id.* (emphasis added). But to be "in accordance with this section," a petition for review must challenge a "final order of removal." 8 U.S.C. § 1252(a)(1), and an ultra vires order is "*not* a final order of removal." *Mejia Galindo*, 897 F.3d at 898.

8

challenge such orders, the absence of any § 1252 jurisdiction over *ultra vires* removal orders threatens to create a serious constitutional problem."). At the very least, it is not "clear that the question of law could [have been] answered in another judicial forum," which "strongly counsels against adopting a construction that would raise serious constitutional questions." *See St. Cyr*, 533 U.S. at 314.

Here, a caveat. Thoung challenges the district court's jurisdiction to issue the stipulated removal order. What she does not do is admit jurisdiction but then contest how the district court exercised its jurisdiction. *See Latu v. Ashcroft*, 375 F.3d 1012, 1020 (10th Cir. 2004) ("An official act does not become ultra vires if the officer was statutorily empowered to act but may have acted erroneously."). She contends that the removal order was void from its inception. *See Kumarasamy v. Attorney Gen. of U.S.*, 453 F.3d 169, 172 (3d Cir. 2006) (upholding the district court's jurisdiction to review a habeas petition, because instead of arguing that the removal order didn't "lawfully authorize his removal," the petitioner argued that no valid removal order existed at all—that he was not "seeking review *of* a removal order").

In contrast, the petitioner in *Gonzalez-Alarcon v. Macias* challenged the district court's underlying decision that he was not a U.S. citizen. There, we held that § 1252(a)(5) barred a detainee in ICE custody from seeking to invalidate his pending removal order based on his citizenship.[9] 884 F.3d 1266, 1275 (10th Cir. 2018). Unlike the

---

[9] Our decision in *Gonzalez-Alarcon* runs counter to the Ninth Circuit's decision in *Anderson*, which recognized that "the plain language of § 1252(b)(5) not only permits but *requires* [circuit courts] to evaluate a claim to United States nationality upon a petition for review, even where our jurisdiction would otherwise be limited." 673 F.3d at 1096.

district court in Thoung's case, the immigration judge in *Gonzalez-Alarcon* had statutory authority to rule on the petitioner's citizenship claim, and even to rule incorrectly. *See Latu*, 375 F.3d at 1020. The same logic applies when a noncitizen challenges an immigration judge's legal conclusion that his criminal conviction qualifies as a statutory basis for removability, a conclusion that the immigration judge is authorized to make. *See*, *e.g.*, *Hamilton v. Holder*, 584 F.3d 1284, 1288 (10th Cir. 2009) (holding that immigration judges are authorized to examine PSRs to determine whether a crime qualifies as an "aggravated felony") (citing *Nijhawan v. Holder*, 557 U.S. 29, 32 (2009)). Although district courts can find facts and reach legal conclusions, they cannot assume jurisdiction over removal proceedings absent clear statutory authority.

For these reasons, I would reverse the district court, remand with instructions that the district court vacate the removal order, and require that Thoung's immigration issues be decided in the proper forum. I respectfully dissent.

---

But *Gonzalez-Alarcon* acknowledged that the petitioner could file a motion asking the immigration judge to reopen the removal proceedings, alleviating any Suspension Clause concerns, at least "at the present time." *See* 884 F.3d at 1275. And as one panelist noted, the petitioner had "an alternative means for relief"—he could have, at any time, "file[d] a Form N–600," which, if granted, would have made him "categorically ineligible for removal." *Id.* at 1281–82 (Tymkovich, C.J., concurring).