In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3105

ERNEST A. ODEI and
SPIRIT OF GRACE OUTREACH,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-06019 — **Andrea R. Wood**, *Judge*.

ARGUED APRIL 12, 2019 — DECIDED SEPTEMBER 10, 2019

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Ernest Odei traveled from his native Ghana to the United States in 2017 to meet with academic advisors and to perform missionary work. When he arrived in Chicago, border patrol agents barred his entry because he did not have the proper visa. After a short detention, immigration authorities gave Odei the option to withdraw his

application for admission and return to Ghana. He chose to do so, but several months later he brought this lawsuit challenging the inadmissibility determination.

The district court dismissed the case for lack of jurisdiction under 8 U.S.C. § 1252(a)(2)(A), which bars judicial review of any "order of removal pursuant to" the expedited removal procedure in 8 U.S.C. § 1225(b)(1)(A)(i). Odei argues that the jurisdictional bar does not apply because it refers only to "order[s] of removal" and there was no order of removal here because he withdrew his application for admission. Under the relevant statutory definitions, however, an "order of removal" refers to both an order *to remove* as well as an order that an alien *is removable*. Odei is challenging the latter, so the jurisdictional bar applies.

## I. Background

Odei is a pastor of a Christian church in Ghana and a founding board member of the Spirit of Grace Outreach, a nonprofit religious group in the United States. He is also a Ph.D. candidate in an online educational program sponsored by a Christian university in Tennessee. In 2017 Spirit of Grace invited him to visit the United States to participate in its religious activities. Odei also planned to speak at churches and youth groups, perform missionary work, and meet with his academic advisors at the university. Before his trip Odei applied for a B-1/B-2 visa, which the U.S. Consulate in Ghana approved.

When Odei arrived at Chicago's O'Hare International Airport, agents of the U.S. Customs and Border Protection agency questioned him about his trip. They eventually determined that his visa was invalid for his intended mis-

sionary and academic purposes, which meant he was inadmissible under 8 U.S.C. § 1182(a)(7). They found him inadmissible and canceled the visa. They did not immediately remove him, however, because he answered "yes" when asked if he feared returning to Ghana. They transferred him to the custody of Immigration and Customs Enforcement, and he was held in the McHenry County Jail. A week later Odei dropped his asylum claim. That would normally require immediate removal under § 1225(b)(1), but the Department of Homeland Security gave Odei the opportunity to withdraw his application for admission and return to Ghana immediately. He did just that.

This lawsuit came a few months later. Odei and Spirit of Grace sued the Department of Homeland Security and Customs and Border Protection challenging the decision not to admit him. He raised claims under the Immigration and Nationality Act ("INA"), the Administrative Procedure Act, and the Religious Freedom Restoration Act.[1] The district judge dismissed the suit based on the INA's jurisdiction-stripping provision. This appeal followed.

## II. Discussion

We start with a brief overview of the statutory scheme. When an immigration officer concludes that an immigrant lacks a valid visa and thus is inadmissible under § 1182(a)(7),

---

[1] The complaint also named Immigration and Customs Enforcement and the McHenry County Sheriff as defendants, alleging that Odei was denied access to a Bible during his detention and that no one told him of his rights under the Vienna Convention to contact consular officials and have the Ghanaian consulate notified of his detention. Finally, the complaint alleged violations of the Freedom of Information Act. These claims were either dropped or dismissed and are no longer at issue.

the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i). This is commonly called "expedited removal," but there are two exceptions. The officer may not order immediate removal if "the alien indicates either an intention to apply for asylum … or a fear of persecution." *Id.* And the officer need not order removal if the alien withdraws his application: "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). Because Odei initially claimed that he feared persecution but then withdrew his application for admission and left the country voluntarily, there was no expedited removal.

As relevant here, the INA provides that "no court shall have jurisdiction to review … any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)." § 1252(a)(2)(A)(i); *see also Khan v. Holder*, 608 F.3d 325, 329–30 (7th Cir. 2010) (explaining the operation of the jurisdictional bar). Odei argues that there was no "order of removal" because he withdrew his application and voluntarily left the county, so § 1252(a)(2)(A) does not apply.

This argument misreads the INA. The term "order of removal" is synonymous with the term "order of deportation." *Mejia Galindo v. Sessions*, 897 F.3d 894, 897 (7th Cir. 2018); *Guevara v. Gonzales*, 472 F.3d 972, 796 (7th Cir. 2007). The term "order of deportation" refers not only to a decision "ordering deportation" but also to an order "concluding that the alien is deportable." 8 U.S.C. § 1101(a)(47)(A).

That means courts lack jurisdiction to review orders *to remove* and also orders that an alien *is removable*. This case falls in the latter category. Border patrol agents determined that Odei was inadmissible under § 1182(a)(7) and cancelled his visa. Under § 1225(b)(1)(A)(i), the Department of Homeland Security was required to remove him once he dropped his asylum claim. Though that never happened because Odei withdrew his application for admission, the initial determination that he was inadmissible under § 1182(a)(7) and § 1225(b)(1)(A)(i) was nonetheless an "order of removal."

Compare Odei's case to the circumstances at issue in *Guevara*. Eusebio Guevara, a Honduran native and lawful permanent resident, was placed in removal proceedings based on convictions for retail theft and two counts of fourth-degree sexual assault. *Guevara*, 472 F.3d at 973. An immigration judge found him removable after classifying the sexual-assault convictions as crimes of moral turpitude. But the judge granted discretionary relief in the form of a waiver of removal. *Id.* The Board of Immigration Appeals reversed the latter determination and ordered Guevara removed. *Id.* Guevara argued that the Board cannot issue a removal order in the first instance, and because the immigration judge had granted a waiver, there was no removal order. *Id.* at 975–76. We disagreed, explaining that "if an [immigration judge] decides that an alien is removable but does not ultimately order removal due to a grant of a waiver, cancellation, or the like, the decision that the alien is removable is nonetheless an 'order of deportation'" that can be given effect by the Board if it reverses the judge's decision regarding discretionary relief. *Id.* at 976.

Odei's case is similar. Indeed, it involves application of a parallel provision of the same statute: Odei was found inadmissible under § 1182(a)(7) while Guevara was found inadmissible under § 1182(a)(2).

Odei argues in the alternative that the jurisdiction-stripping provision should have no effect when an alien challenges the admissibility decision under the Religious Freedom Restoration Act. He first notes that the Act has its own right of action. *See* 42 U.S.C. § 2000bb-1(c) ("A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding … ."). He then points to 42 U.S.C. § 2000bb-3, which says that all federal statutory law is subject to the Act "unless such law explicitly excludes such application by reference to this chapter." He emphasizes that the INA's jurisdiction-stripping provision never specifically refers to the Religious Freedom Restoration Act—though we note that it *does* expressly say that it applies "[n]otwithstanding any other provision of law (statutory or nonstatutory)." § 1252(a)(2)(A).

Nothing in the Religious Freedom Restoration Act over-rides § 1252(a)(2)(A)'s jurisdictional bar. The mere existence of a private right of action under a federal statute does not eliminate jurisdictional obstacles. *See Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) ("[P]laintiffs must demonstrate both that a federal court will have jurisdiction over their claim, *and also* that they (the plaintiffs) have a right of action to initiate that claim. In other words, establishing the court's jurisdiction and the litigants' right of action are two requirements that must be satisfied independently.") (emphasis added); *see also FDIC v. Meyer*,

510 U.S. 471, 484 (1994) (explaining that the questions of sovereign immunity and the existence of a right of action are "analytically distinct"); *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 456 (1974) (same, with standing). Whether or not the inadmissibility order burdened Odei's religious practice, § 1252(a)(2)(A) precludes judicial review all the same.

We've explained that under § 1252(a)(2)(A) "a court has jurisdiction to inquire only 'whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.'" *Khan*, 608 F.3d at 330 (quoting 8 U.S.C. § 1252(e)(5)). In other words, in deciding whether § 1252(a)(2)(A)'s jurisdictional bar applies, the specific nature of a claimant's statutory challenge simply doesn't matter. To the contrary, the jurisdictional bar is designed to preclude courts from examining those specifics in the first place. This case was properly dismissed.[2]

AFFIRMED

---

[2] The Ninth Circuit has held that a related review-preclusion clause in 8 U.S.C. § 1252(e)(2) is an unconstitutional suspension of the writ of habeas corpus. *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097, 1119 (9th Cir. 2019). The Solicitor General filed a petition for certiorari. Our case does not involve habeas corpus, so we do not need to address *Thuraissigiam*.